885 F.2d 486
 Franklin J. DALEY, Appellant,
v.
Rubin WEBB, Individually and as Chief of the Fire Department
of the City of Little Rock; Herbert Smith,
Individually and as Captain of the Fire
Department of the City of
Little Rock, Appellees.
 No. 88-1596.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 12, 1989.
Decided Sept. 25, 1989.
Rehearing Denied Oct. 26, 1989.
 
 Robert E. Adcock, Little Rock, Ark., for appellant.
 Edward G. Adcock, Little Rock, Ark., for appellees.
 Before BOWMAN and WOLLMAN, Circuit Judges, and HENLEY, Senior Circuit Judge.
 BOWMAN, Circuit Judge.
 
 
 1
 This is a wrongful discharge case against city officials under 42 U.S.C. Sec. 1983. Plaintiff Franklin J. Daley, formerly a firefighter with the Little Rock Fire Department (LRFD), appeals from a District Court[1] judgment entered pursuant to a jury verdict in favor of defendants Rubin Webb and Herbert Smith, respectively Chief and Captain of the LRFD. For reversal, Daley argues that termination of his employment with the LRFD was wrongful in that he was not given meaningful notice or a hearing and because the decision to terminate was made in retaliation for his exercise of rights protected by the First Amendment. We affirm.
 
 I.
 
 2
 Daley was a fourteen-year employee of the LRFD. At trial he provided evidence of a number of incidents in support of his claim that he was harassed and eventually fired in retaliation for exercising rights protected by the First Amendment. The first such incident had to do with the sign-in logbook at the LRFD airport station, where Daley then was working. Captain Smith, Daley's supervisor, had removed from the logbook a page showing that Captain Smith reported late for duty one day. This was a violation of LRFD rules. Firefighter Dennis Smith wrote a memorandum informing District Chief Troy Burgess of the infraction, and Daley claims he too informed Chief Burgess of the incident. Captain Smith subsequently was reprimanded. Later, on December 21, 1983, Captain Smith told the firefighters at the station to remove ice from the concrete apron around the station. Daley claims he was assigned this duty in retaliation for the report he made to Chief Burgess. However, all the firefighters at the station were ordered to remove ice, and Captain Smith apparently had no knowledge that Daley had reported the rules violation. While performing this duty, Daley slipped and fell, injuring his back.
 
 
 3
 Subsequently, the relationship between Daley and Captain Smith deteriorated. In one incident Daley was directed to remove some personal property he had been storing at the station, including an air compressor. Approximately one week later, after being ordered to do so by Chief Burgess, Daley removed the compressor. He did so without the assistance of anyone else, even though a co-worker offered assistance, and reinjured his back.
 
 
 4
 In February 1984 Daley testified at a Civil Service Commission hearing, alleging that certain firefighters were obtaining advance copies of LRFD promotion tests. The allegations prompted an investigation by the Internal Affairs Division of the Little Rock Police Department but no substantial evidence of wrongdoing was found. After the investigation commenced Daley was transferred to another station. He suggests that this was in retaliation for his participation in the Civil Service hearings, but the appellees argue that he was transferred because of his strained relations with Captain Smith. Daley says in his brief that the appellees' "many disciplinary acts" "compelled" him to file suit in May 1984; he voluntarily dismissed that suit in September 1986. Brief for Daley at ix.
 
 
 5
 The next three years of Daley's employment appear to have been uneventful, except for significant amounts of sick leave and relatively minor disputes regarding his failure to provide "sick slips." In the spring of 1987, however, Daley again became embroiled in conflict with his supervisors. The conflict stemmed from what Daley characterizes as an "oral reprimand" by District Chief Marcus White. One afternoon Daley had spent fifteen minutes conversing with his wife in a car parked outside the station. Chief White informed Daley it was against station policy for firefighters to sit outside the station in cars with their girlfriends or wives, and that if a private place for discussion was needed an office at the station would be made available. Daley informed Chief Webb of the "reprimand" and made a number of allegations about Chief White. The upshot of the incident was that in late April 1987 Chief Webb sent Daley a letter of reprimand for violating LRFD chain of command regulations and for publishing false and defamatory information regarding Chief White. The following May fourteen of Daley's co-workers signed a letter to Chief Webb asking that Daley be transferred because his contentious attitude was having a negative effect on their morale and operating effectiveness. Appellees' App. at 31.
 
 
 6
 On June 24, 1987 Daley received a reprimand from Chief Webb for failing to notify his immediate supervisor that he would be absent due to illness on June 18. Daley suggests that this reprimand was in retaliation for bringing the present suit, which he filed June 22, but memoranda from Captain Gene Tucker and Chief White addressing Daley's absence and recommending reprimand are dated June 18. Subsequently, in a memorandum dated June 24, 1987 Captain Tucker informed Chief White that Daley had disobeyed orders, and in a memorandum dated July 9, 1987 Captain Van Alexander informed Chief White of insubordination by Daley.
 
 
 7
 On July 9, 1987 Daley was given notice of possible disciplinary action. On July 13 and 22 administrative hearings were held, and based on evidence of his inadequate job performance, insubordination, and conduct detrimental to the morale and operating effectiveness of the department, Daley was given a thirty-day suspension. See Appellees' App. at 49; see also Appellees' App. at 37, 44. While Daley was serving his suspension, Chief Webb received additional allegations of rules violations by Daley, including that he refused to inform his supervisors of his physical condition while saying he would perform his duties only "up to a point," that he responded late to an alarm, that he taunted his captain, and that he reported to an alert without proper equipment.
 
 
 8
 Consequently, on August 18, 1987 Chief Webb drafted another notice of possible disciplinary action. See Appellees' App. at 57. The notice advised that the LRFD was considering further disciplinary action in light of the five additional charges outlined in the memorandum, and that Daley was entitled to a hearing, which was tentatively scheduled for August 24, 1987. Daley claims that attempts to serve him with this notice were "a sham" and that he was "out of town during that period of time and never received notice of termination." Brief for Daley at 8. But the appellees presented evidence that Captain Lane Kinder hand-delivered a package of letters from Chief Webb to Daley on or about August 18. See IV Tr. at 98-99; III Tr. at 130.
 
 
 9
 When Daley did not appear for his hearing, Chief Webb wrote another memorandum, dated August 25, offering Daley another opportunity for a hearing and informing Daley that if he failed to avail himself of his right to a hearing the right would be considered waived. This time Captain Kinder was unsuccessful in his efforts to serve Daley, so a private investigator was hired to effect service. The investigator testified that it appeared Daley was attempting to avoid service, and that on one occasion Daley even sped away in his car to do so. IV Tr. at 106-08. Unable to serve Daley personally, the private investigator eventually gave the memorandum to Daley's mother and sister.
 
 
 10
 Finally, on September 1, 1987, having received no response from Daley, Chief Webb terminated Daley's employment, citing the charges outlined in the August 18 memorandum. Appellees' App. at 64. Daley subsequently amended his complaint to include claims that his suspension and termination were wrongful. The case was heard before a jury, which returned verdicts in favor of the defendants, and Daley appeals.[2]
 
 II.
 A.
 
 11
 Daley's claim that he was not afforded adequate procedural due process by the LRFD in its termination proceedings is not properly before us, as it was not raised in the District Court. Although Daley argues that he presented this claim to the District Court, we have carefully considered all his arguments and find them to be completely without merit. We are satisfied that at no time was the trial judge or the jury given an opportunity to consider this claim. It is well-settled law that we will not address an issue not raised in the trial court, save in exceptional circumstances where the result of our not addressing the issue would be a " 'plain miscarriage of justice' " or " 'inconsistent with substantial justice.' " Morrow v. Greyhound Lines, Inc., 541 F.2d 713, 724 (8th Cir.1976) (quoting Hormel v. Helvering, 312 U.S. 552, 558, 61 S.Ct. 719, 722, 85 L.Ed. 1037 (1941) and Fed.R.Civ.P. 61). Accord Gregory v. Honeywell, Inc., 835 F.2d 181, 184 (8th Cir.1987). This case presents no such exceptional circumstances. We therefore decline to consider this claim.
 
 B.
 
 12
 The real thrust of Daley's suit, and the theory upon which the District Court submitted the case to the jury, was that he was harassed and eventually fired by his supervisors at the LRFD in retaliation for his exercise of First Amendment rights. The jury found against him. Daley informed this Court at oral argument that the relief he seeks is a new trial, on the ground, essentially, that the jury's verdict was against the weight of the evidence.[3] This issue also, however, is not properly before us, as Daley never asked the District Court for a new trial on this ground (or, for that matter, on any ground).
 
 
 13
 Whether a motion for a new trial based on a weight-of-the-evidence claim should be granted or denied is confided almost entirely to the discretion of the trial court, because "[t]he trial court has the advantage of seeing and hearing the witnesses, thus enabling him to have the feel of the case." Minnesota Mutual Life Insurance Company v. Wright, 312 F.2d 655, 659 (8th Cir.1963). Although we have reviewed trial court rulings on such motions for abuse of discretion, see Rey v. City of Fredericktown, 729 F.2d 1171, 1174 (8th Cir.1983); Burnett v. Lloyds of London, 710 F.2d 488, 489-90 (8th Cir.1983), we also have said that the denial of a motion for a new trial made on the ground that the verdict is against the weight of the evidence is "virtually unassailable on appeal." Grogg v. Missouri Pacific R.R., 841 F.2d 210, 214 (8th Cir.1988). See Green v. American Airlines, 804 F.2d 453, 455 (8th Cir.1986) ("[O]rdinarily, no error can be predicated upon the denial of a motion for a new trial."). See also Kelley v. Crunk, 713 F.2d 426, 427 (8th Cir.1983) (noting seventh amendment concerns that would be raised by our reversal of an order denying motion for a new trial based on a weight-of-the-evidence claim). Cf. Brown v. Syntex Laboratories, Inc., 755 F.2d 668, 673 (8th Cir.1985) (trial court's determination that new trial should be granted on ground that verdict is against the weight of the evidence is entitled to great deference and is reversible only upon a strong showing of abuse).
 
 
 14
 Because weight-of-the-evidence claims are quintessentially matters entrusted to the discretion of the trial court, it is imperative that a challenge to a verdict as being against the weight of the evidence first be presented to that court. See Kelley v. Crunk, 713 F.2d at 427; Wells Real Est. v. Greater Lowell Bd. of Realtors, 850 F.2d 803, 811 (1st Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 392, 102 L.Ed.2d 381 (1988); 6A J. Moore, Moore's Federal Practice p 59.15 (2d ed. 1989). This requirement obviously represents an application of the general rule that ordinarily we do not consider issues not raised in the trial court, see Morrow, 541 F.2d 713, 724, yet it also recognizes and reinforces the primary (and arguably exclusive) role of the trial court in the adjudication of claims that the verdict is against the weight of the evidence. Daley did not request the District Court to order a new trial based on the weight of the evidence, and therefore his claim, raised here for the first time, can afford him no basis for relief.
 
 
 15
 Even if the issue had been preserved for appeal, we would deny Daley relief. As observed earlier in this opinion, the trial court's determination that a jury verdict is not against the weight of the evidence is entitled to great deference. Had Daley given the District Court an occasion to rule on this matter, and had that court denied his motion for a new trial, we of course would apply a highly deferential standard of review, and perhaps should not review the District Court's ruling at all. See Green v. American Airlines, 804 F.2d at 455; Kelley v. Crunk, 713 F.2d at 427. But even if our review were de novo we would not order a new trial in this case, for after carefully reviewing the record we conclude that the jury's verdict is not against the weight of the evidence. As our adumbration of the factual underpinnings of this case indicates, see supra Part I, numerous LRFD employees found fault with Daley's conduct, there was evidence of Daley's repeated violation of departmental rules and regulations, and the incidents cited by Daley as examples of harassment and retaliation were at least equally well explained as measures taken for legitimate reasons.[4]
 
 
 16
 For the reasons set forth above, the judgment of the District Court is affirmed.
 
 
 
 [1]
 Honorable Bruce M. Van Sickle, Senior United States District Judge for the District of North Dakota, sitting by designation
 
 
 [2]
 Daley's attorney on appeal was not his attorney at trial
 
 
 [3]
 Daley complains, for example, that the jury reached the wrong result by "overlooking" the evidence supporting his claim
 
 
 [4]
 Daley also suggests that, based on the evidence, judgment should have been entered in his favor as a matter of law. See, e.g., Brief for Daley at xiv ("the evidence overwhelmingly established that the disciplinary acts of appellees were motivated and designed to harass appellant" and "the jury had no basis in the record to find for appellees"). Because this argument was not made in the District Court, it is not properly before us, and in any event it obviously lacks merit. As our discussion above suggests, there was more than sufficient evidence countering Daley's case to present a jury question on his retaliation claim