Theodore J. FLETCHER, Virginia
L. Gender, Dennis L. Beckley,
Appellants,

v.

Morton I. GOLDER, Vincent E. Shaw, Rainey J. Crawford, Mary C.P. Pincus, being the Members of and constituting the Board of Election Commissioners of St. Louis County, Missouri, Appellees,

Raye Robertson; Vicki Hunn, Hernandez Cuenca, Grant Keyes, Elizabeth Lou Heiman, John Fernandez, Howard McClellan, Intervenors Below—Appellees.

No. 92–1310.

United States Court of Appeals,
Eighth Circuit.

Submitted March 10, 1992.

Decided March 19, 1992.

Lawrence C. Friedman, St. Louis, Mo., argued (Gordon L. Ankney and Patricia L. Cohen, on the brief), for appellants.

Paul M. Brown, St. Louis, Mo., argued (Kirk R. Crowder and Neal C. Stout, on the brief), for appellees.

Before WOLLMAN and MAGILL, Circuit Judges, and WOODS,* District Judge.

WOLLMAN, Circuit Judge.

Theodore J. Fletcher, Virginia L. Gender and Dennis L. Beckley (appellants), proponents of a reapportionment plan for the County Council districts in St. Louis County, Missouri, appeal from the district court's[1] adoption of a different plan. We affirm.

## I.

St. Louis County is divided into seven districts for the purpose of electing representatives to the County Council, the governing body of St. Louis County. The St. Louis County Charter ("Charter") requires that a Reapportionment Commission ("Commission") be appointed to reapportion the County Council districts within six months after each decennial census. The Charter also mandates that the Commission reapportion the County so that the "population of each district shall, as near as possible, [be] equal ... [and] be composed of contiguous territories compact as may be."

After the 1990 census was complete, the fourteen Commissioners, seven Republicans and seven Democrats, considered and voted upon four plans:

1. The Democratic Plan

Under this plan, the maximum deviation[2] from equal population is 1.12% and the average variance[3] among the districts is .42%. The minority district under this plan contains a black population of 60.2%.

2. The Republican Plan

Under this plan, the maximum deviation is 1.15% and the average variance is .29%. The minority district under this plan contains a black population of 62.4%. Appellants claim that under this plan the Third District is changed from a "swing" district (or "marginal Republican district") to a Republican district.

3. The Black Elected County Officials Plus Plan

Under this plan, the maximum deviation is 1.15% and the average variance is .32%. The minority district contains a black population of 64.5%. Appellants claim that this plan changes the Third District from a "swing" district (or a "marginal Republican district") to a Republican district and places two incumbent council members (both Democrats) into the same district.

4. The Modified Williams Plan

Under this plan, the maximum deviation is 1.13% and the average variance is .31%. The minority district contains a black popu-

* The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

The district court's amended order was entered on February 4, 1992. At appellants' request, we entered an order expediting the appeal. Our consideration of this case has been greatly aided by the district court's thorough, comprehensive memorandum opinion.

2. The "maximum deviation" is the sum of the percentage deviations of the largest and smallest districts from equal population.

3. The "average variance" is the average of the percentage variances of the districts from equal population.

lation of 65.1%. Appellants contend that under this plan the Third District is changed from a "swing" district (or a "marginal Republican district") to a Republican district. In addition, the Modified Williams Plan (as eventually adopted by the district court) places two Democratic incumbents in the same district.

No one plan received the nine votes required for adoption. Appellants then filed suit against the Commission, pursuant to 42 U.S.C. §§ 1983 & 1988, for reapportionment of St. Louis County. At the hearing before the district court, the parties presented evidence regarding the work of the Commission, the composition of the various plans, and the manner in which they were devised. The district court, however, excluded all testimony regarding the political motivations behind the competing plans. The district court chose the Modified Williams Plan as the one to be implemented.

Appellants argue that the district court erred by 1) excluding evidence of the factors which motivated the design of the various reapportionment plans; 2) concluding that the Modified Williams Plan best meets the requirements of equal population, compactness, and minority representation; and 3) considering and applying a Voting Rights Act "remedy."

## II.

■ The district court ruled *in limine* to exclude all evidence of the political motivations behind the creation of the plans submitted to the district court for review. Appellants argue that because the district court failed to consider this evidence, it could not choose a plan that was free from political gerrymandering.

The district court, explaining its decision to exclude this evidence, stated:

> While legislatures may legitimately compromise on partisan considerations, a court, where no legislative body has adopted a plan, should base its decision on the Constitution and the laws rather than become embroiled in partisan political questions. Therefore, this court declined to consider evidence concerning

political competitiveness and evidence concerning the protection of incumbents.

Appellants' argument is as follows. The court refused to consider the political motivations behind each of the plans. Because there is necessarily a political motivation behind each plan, acceptance of any plan ratifies the political motivation (and potential gerrymandering) behind that chosen plan. Thus, appellants argue, the district court's exclusion of the political motivation testimony made selection of a non-"tainted" plan impossible. Appellants cite *Gaffney v. Cummings*, 412 U.S. 735, 753, 93 S.Ct. 2321, 2331, 37 L.Ed.2d 298 (1973), gleaning from it the proposition that this "politically mindless approach" may "produce whether intended, or not, the most grossly gerrymandered result."

Appellees, the Plaintiffs/Intervenors in the court below, counter that *Gaffney* does not support appellants' argument and actually stands for the proposition that the federal courts should not become entangled in political issues when deciding reapportionment cases. 412 U.S. at 752–54, 93 S.Ct. at 2331–32. ("Beyond [challenges under the Fourteenth Amendment], we have not ventured far or attempted the impossible task of extirpating politics from what are the essentially political processes of the sovereign states.").

> We have repeatedly emphasized that legislative reapportionment is primarily a matter for legislative consideration and determination, for a state legislature is by far the best situated to identify and then reconcile traditional state policies within the constitutionally mandated framework of substantial population equality. The federal courts by contrast possess no distinctive mandate to compromise sometimes conflicting state apportionment policies in the people's name.

*Connor v. Finch*, 431 U.S. 407, 414–15, 97 S.Ct. 1828, 1833–34, 52 L.Ed.2d 465 (1977). Finally, appellees contend that appellants cite no other authority which would require the district court to take into account partisan political motivations.

Appellants also argue, however, that because gerrymandering can constitute a justiciable claim, *Davis v. Bandemer*, 478 U.S. 109, 106 S.Ct. 2797, 92 L.Ed.2d 85 (1986), the court was required to hear evidence of political motivations so that it could choose a non-gerrymandered plan. Appellees counter that appellants failed to raise the *Davis* argument in the district court and that they are thus barred from raising it on appeal. *See Daley v. Webb,* 885 F.2d 486, 488 (8th Cir.1989). In any event, they argue, the *Davis* court placed a very high burden on appellants in terms of the proof required to maintain a constitutional attack based on gerrymandering. Appellees argue that appellants do not meet this burden because "the mere fact that a particular apportionment scheme makes it more difficult for a particular group in a particular district to elect the representatives of its choice does not render that scheme constitutionally infirm." *Davis,* 478 U.S. at 131, 106 S.Ct. at 2810. Thus in this case, they argue, although the Third District may become a Republican stronghold under the Modified Williams Plan, the district court's failure to hear evidence of political motivations does not rise to a constitutional violation under the *Davis* standard.

We reject appellants' challenge to the exclusion of the evidence of political motivations behind any of the plans. In *Gaffney,* the Supreme Court was reviewing a challenge to a reapportionment plan that had been adopted by a legislature. 412 U.S. at 736–37, 93 S.Ct. at 2322–23. In contrast, the district court in this case was called upon to reapportion St. Louis County because the legislative body failed to agree on a plan. The district court was free to draw its own plan, or to adopt a plan that had been proposed to the Commission. And appellants, who admit that evidence of partisan political motivation is irrelevant and need not be considered when a plan is court-drawn, have failed to bring to our attention any authority which recognizes a legal distinction between a court-drawn plan and a court-adopted plan.

Furthermore, we reject appellants' contention that because claims of gerrymandering can be justiciable under *Davis v.*

*Bandemer,* the district court was required to consider evidence of partisan political motivations. In *Davis,* as in *Gaffney v. Cummings,* the legislative body completed its task of reapportionment without the aid of the federal courts. It was only after reapportionment was completed that the legislative scheme was challenged on the ground that reapportionment had been gerrymandered. *Davis,* 478 U.S. at 115, 106 S.Ct. at 2801. Again, in contrast, the district court in this case was called upon to draw or adopt a reapportionment plan after the appropriate legislative body failed to do so. Accordingly, appellants' reliance on *Davis* is misplaced.

We agree that the district court in this case was required to achieve: (1) equality of population among districts; (2) geographic compactness; and (3) protection of minority voting rights. *See* District Court Amended Memorandum and Order (Order) at 10–11, 13–15, 17–18. The political motivations behind any of the plans are legally irrelevant.

■ Next, appellants argue that the district court placed considerations of race above other neutral considerations such as equal population and compactness. First, appellants argue that since their plan has the lowest maximum deviation in population between districts, the district court erred by not accepting their plan. We do not agree.

The Modified Williams Plan differed in maximum deviation from the Democratic Plan by only .01%. *See Chapman v. Meier,* 420 U.S. 1, 27, 95 S.Ct. 751, 766, 42 L.Ed.2d 766 (1975) ("plan must ordinarily achieve the goal of population equality with little more than de minimis variation"). Further, the Modified Williams Plan has a .11% lower average deviation among districts and hence is a more statistically equal plan.

■ Second, appellants argue that the district court accepted a plan "which failed to conform to accepted notions of compactness." They argue that compactness was subordinated to racial considerations, a result which they claim is contrary to Mis-

souri law. Missouri law, appellants claim, prohibits the "branches" or "strips" which exist in the First District under the Modified Williams Plan. *See Preisler v. Doherty*, 365 Mo. 460, 284 S.W.2d 427 (1955). Appellees counter that although there are "branches" in the Modified Williams Plan, the branches are necessary to achieve racial fairness and minority representation. They argue that without the "branches," the minority population in the First District would be only 51.8%, and that the Democratic Plan also includes such "branches," though to a lesser extent.

Appellees also argue that *Preisler* does not support the proposition that "branches" are illegal under Missouri law. Rather, they maintain, *Preisler* condemned long, narrow strips intended to hinder equality of representation rather than promote it. The *Preisler* court, they contend also focused on the failure of the strips to follow existing ward lines so that the court could reasonably determine the populations of the districts. Thus, appellees argue, *Preisler* does not support appellants' position. We agree.

The district court found that "viewed as a whole, the Modified Williams Plan meets the goal of compactness." Order at 21. Indeed, the district court found that 1) although the First District under the Modified Williams Plan was less compact than under the Democratic Plan, the First District under the Modified Williams Plan was nevertheless sufficiently compact; and 2) the remaining six districts were more compact under the Modified Williams Plan than under the Democratic Plan. Order at 19–21; *see also Preisler v. Kirkpatrick*, 528 S.W.2d 422, 426–27 (Mo.1975). We agree with the district court's determination that the Modified Williams Plan, as a whole, meets the requirements of compactness.

Finally, appellants argue that the district court failed to make sufficient findings of fact to justify the application of Voting Rights Act ("VRA") principles, particularly since no VRA violation was proven.

The district court stated:

Technically, Plaintiffs are correct that a violation of the Voting Rights Act has not been pleaded.... However, any plan adopted by the court and implemented by the St. Louis County Election Board is subject to challenge under the Voting Rights Act. Therefore, the Court concludes that the requirements of the Voting Rights Act are essential considerations in the reapportionment of St. Louis County.

Order at 15–16. Indeed, appellants expressly recognize this principle in their brief. Appellants' Brief at 25 ("Clearly, a reapportionment plan cannot violate existing federal law."). Thus, while VRA procedures were not followed (because this is not a VRA case), the district court correctly reasoned that it was constrained to adopt a plan that comported with existing federal law.

■ Appellants also argue that the district court erred by concluding that a super-majority of 65% was required to guarantee minority representation. They contend that since a 65% minority district is not required under federal law, the district court erred by using this figure as the determining factor in its decision to adopt the Modified Williams Plan.

■ The district court, however, specifically found that the 65% figure is not automatically mandated. Order at 15. Rather, the district court applied the analysis set forth in appellants' brief. "The question of a minimum acceptable percentage minority population in a 'minority district' is a question of fact and is dependent on the court's determination of what percentage would afford the minority group 'a reasonable opportunity to participate in the political processes and to elect candidates of their choice.'" Appellants' Brief at 26 (citing *Thornburg v. Gingles*, 478 U.S. 30, 44, 106 S.Ct. 2752, 2763, 92 L.Ed.2d 25 (1986)). Such factual determinations by the district court will not be overturned unless clearly erroneous.

The district court found, based upon the testimony of appellees' expert, Dr. Kenneth Warren, that the Modified Williams Plan "best provides blacks a meaningful opportunity to participate in the political process," Order at 17, and that the Demo-

cratic Plan was insufficient in this regard. Without recounting the details of Dr. Warren's testimony, we conclude that the district court did not err in making this finding. It was for the district court to determine the weight to be given to Dr. Warren's testimony and to the testimony of appellants' expert witness, and we cannot say that the district court erred in accepting the former and rejecting the latter.

The district court's order is affirmed. Our mandate to issue forthwith.