**NORWEST BANK NEBRASKA, N.A., Appellant,**

v.

**W.R. GRACE & CO.—CONN., Appellee.**

**No. 91–2276.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1991.

Decided April 6, 1992.

Kenneth B. McClain, Independence, Mo., argued (Philip J. Goodman, Steven G. Silverman and John A. Hubbard, Birmingham, Mich., on brief), for appellant.

Michael G. Connery, Omaha, Neb., argued (David A. Jacobson and Tory M. Bishop, on brief), for appellee.

Before GIBSON, Circuit Judge, FRIEDMAN,* Senior Circuit Judges, and MAGILL, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Nebraska dismissing a product liability diversity case on the ground that the governing Nebraska statute of limitations bars the suit. The appellant contends that application of the statute to preclude its suit violated the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution and the due process and other provisions of the Nebraska Constitution. We decline to decide the federal due process claim because the appellant failed to raise it in the district court. We reject on the merits the other federal and state constitutional claims and, therefore, affirm.

* DANIEL M. FRIEDMAN, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

## I.

In 1978, Nebraska enacted a statute governing numerous aspects of product liability actions, including time bars for bringing those actions. Neb.Rev.Stat. § 25–224 (Reissue 1989). Subsection 1 provides that "[a]ll product liability actions ... shall be commenced within four years next after the date on which the death, injury, or damage complained of occurs." Subsection (2) provides that "[n]otwithstanding subsection (1) ... any product liability action ... shall be commenced within ten years after the date when the product which allegedly caused the personal injury, death, or damage was first sold or leased for use or consumption." § 25–224(2). The statute further provides that "any cause of action or claim which any person may have on July 22, 1978 [the effective date of the statute], may be brought not later than two years following such date." § 25–224(4).

The appellant Norwest Bank Nebraska (Norwest) filed suit in 1989 against the appellee W.R. Grace & Co. (Grace). The complaint alleged that Norwest owns the Norwest Bank Center in Omaha, Nebraska, constructed between 1969 and 1970; that Grace manufactured a fireproofing product containing asbestos which was installed on the building's beams and structural members during construction; that asbestos is a known carcinogen; and that after Norwest discovered the presence of the asbestos, Grace refused to remedy the hazard it created. Norwest alleged that the asbestos contaminated the building, creating unacceptable and unanticipated health risks, and that the asbestos fireproofing must be removed and the building decontaminated at a cost of more than five million dollars. The complaint sought damages based on strict liability in tort, negligence, misrepresentation, breach of express and implied warranties, and civil conspiracy.

Grace moved for summary judgment, contending that § 25–224(2) barred Norwest's suit. Norwest countered that § 25–224 violated (1) the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, U.S. Const. am. XIV, § 1, (2) article I, §§ 3 & 13 (due process clause and open courts guarantee) and (3) article III, §§ 14 & 18 (statute title requirements and prohibition of "special legislation") of the Nebraska Constitution.

The district court (C.J. Strom) rejected each of Norwest's challenges to the statute, granted the motion and dismissed the case. After reviewing Nebraska and federal cases sustaining the constitutionality of § 25–224 and similar Nebraska statutes, the court held that "the statute of limitations in § 25–224 is applicable to this case," that the statute is "a permissive legislative enactment which does not violate the provisions of the Nebraska and United States Constitutions," and that "Norwest's claims are barred as a matter of law."

## II.

■ A. Norwest's principal contention is that the application of § 25–224(2) to bar its suit against Grace denied Norwest due process in violation of the Fourteenth Amendment of the United States Constitution. Because Norwest did not raise this federal constitutional claim in the district court, Norwest is precluded from making the argument on appeal.

The only federal constitutional claim Norwest raised in the district court was an equal protection argument, which we discuss and reject in Part II. B. The only due process claim Norwest raised in the district court was one under the Nebraska constitution. That state constitutional claim was inadequate to raise the federal claim.

Norwest argues that because the state due process constitutional provision cannot provide less protection than the federal due process clause, its challenge to the statute under the state constitution also necessarily sufficiently raised the federal constitutional claim to permit it to litigate that claim in this appeal. Nothing Norwest said in the district court indicated to or alerted that court that Norwest was raising a federal constitutional claim. The district court did not view the federal issue as presented to it for decision, since the only constitutional issues that court considered and decided were federal equal protection and state due process and other constitutional

claims. A district court should be specifically informed of the precise constitutional issues that a litigant wants it to decide. Indeed, it is difficult to understand how the district court can be charged with committing reversible error in failing to hold in Norwest's favor on a constitutional claim that Norwest did not raise before that court.

In *Daley v. Webb,* 885 F.2d 486 (8th Cir.1989), this court held that the appellant's claim "that he was not afforded adequate procedural due process" in the administrative proceedings through which his employment was terminated, "is not properly before us, as it was not raised in the District Court." *Id.* at 488. The court pointed out that "at no time was the trial judge or the jury given an opportunity to consider this claim." *Id.* The court stated:

> It is well-settled law that we will not address an issue not raised in the trial court, save in exceptional circumstances where the result of our not addressing the issue would be a " 'plain miscarriage of justice' " or " 'inconsistent with substantial justice.' " ... This case presents no such exceptional circumstances. We therefore decline to consider this claim.

*Id.* (Citations omitted).

Although in *Daley* the due process claim had not been raised at all in the district court, we think the same principle applies in the present case, where Norwest did not raise in the district court the federal due process constitutional claim it now asserts before us, but raised only a state due process contention. Different law governs the two constitutional claims: Federal law determines the federal claims and Nebraska law governs the state claims; moreover, although the language of the federal and state due process clauses may be identical, their substantive content and scope may be different. *Cf. National Capital Naturists, Inc. v. Board of Supervisors,* 878 F.2d 128, 133 (4th Cir.1989) ("The fact that language in a state constitution may parallel that in the United States Constitution is no reason to suppose that the lines of deci-sional authority under those provisions will invariably be identical.").

Norwest's raising of its state due process constitutional claim in the district court did not excuse its failure to raise the federal due process claim there. As in *Daley,* the federal claim "is not properly before us" and we "therefore decline to consider this claim"; also, as in *Daley,* there are no "exceptional circumstances" that would justify departure from this settled principle.

■ B. Norwest's equal protection claim under the Fourteenth Amendment of the United States Constitution relates to the restriction of the limitations period in § 25–224(2) to suits against "a manufacturer, seller, or lessor," resulting from the definition of "products liability action" in Neb.Rev.Stat. § 25–21,180 as an action brought against any of those three entities. According to Norwest, the distinction between manufacturers, sellers and lessors on the one hand, and all other entities such as repairmen on the other, is not rationally related to the legislative purpose in imposing those statutes of limitations in product liability suits and results in unjust discrimination between plaintiffs.

The governing standard for determining the validity of a state statutory classification that does not create a suspect class is that a state statute does not violate the Equal Protection Clause if the classification has a "rational basis" or is "rationally related to a legitimate state interest." *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976); *Cornerstone Bible Church v. City of Hastings,* 948 F.2d 464, 471 (8th Cir.1991). Furthermore, a statutory classification

> does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78 [31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)]. "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical it may be, and unscientific." *Metropolis Theatre Co. v.*

*City of Chicago,* 228 U.S. 61, 69–70 [33 S.Ct. 441, 443, 57 L.Ed. 730 (1913)]. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland,* 366 U.S. 420, 426 [81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961)]. *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970).

Norwest identifies the legislative goal of § 25–225(2) as "assist[ing] consumers and industry through an attempt to hold down the very rapidly increasing premium rates for product liability insurance. L.B. 142, Hearings at 7." The Nebraska Legislature sought to achieve that goal by barring product liability actions commenced more than ten years after the product is first sold or leased. Another possible legislative purpose may have been to curb what the state viewed as an excessive number of product liability actions that might discourage sales or leases within the state. We cannot say that restricting the limitations period to suits against manufacturers, sellers and lessors has no rational basis or is not rationally related to the state's interests.

The Nebraska Legislature reasonably could have concluded that such a bar on product liability actions was a reasonable means for lowering insurance premiums and benefitting consumers. Manufacturers, sellers, and lessors place products in the stream of commerce, pay product liability insurance premiums, and hopefully will pass on to consumers any savings from lower premiums resulting from the repose § 25–224(2) affords. The ten year period provides plaintiffs with ample time within which to bring suit. Although § 25–224 may result in more favorable treatment of some business entities than others, it satisfies the requirement in the Equal Protection Clause that the statutory classification have a rational basis or a rational relation to the legislative purpose.

■ Norwest argues that § 25–224 cannot be rationally related to the legislative goal of reducing product liability insurance rates because those rates are calculated on the basis of national experience, and a single state thus cannot influence such rates through a statute of limitations. We disagree.

The Supreme Court has stated that, under rational basis review of state legislation, "the Equal Protection Clause allows the States wide latitude, ... and the Constitution presumes that even improvident decisions will be rectified by the democratic process." *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (citations omitted).

As we have held above, it was reasonable for the Nebraska legislature to conclude that placing a time bar on product liability actions would result in lower insurance premiums. Even if the Legislature knew that rates were calculated on a national basis, it might well have concluded that other states would enact similar statutes governing product liability suits, and that the presence of these statutes in multiple jurisdictions would have a cumulative impact on national insurance premiums. This is certainly a "state of facts [which] reasonably may be conceived to justify [the statute]." *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

In view of the "wide latitude" that the Equal Protection Clause allows the Nebraska Legislature, we cannot say it was irrational for the legislature to enact § 25–224. Norwest's challenge based on the national nature of insurance rates attacks the wisdom of the legislature in enacting the statute, and not the rationality of the relationship between the statute and its purpose. Whether this statute is the most effectual means for achieving the legitimate legislative goal of lower insurance rates is for the legislature, and not the courts, to determine. *See Dandridge,* 397 U.S. at 486–87, 90 S.Ct. at 1162.

### III.

In challenging § 25–224 under the due process clause of the Nebraska Constitution, Norwest contends that: (1) its cause of action against Grace accrued on January 22, 1970, the last date on which Grace's

asbestos insulation was installed, and became a vested property right on that date; (2) the Nebraska Legislature's enactment of § 25–224(2) extinguished that vested right prior to the time Grace could have discovered its injury and brought suit; and (3) § 25–224(2) thus deprived it of property in violation of the due process clause of the Nebraska Constitution.

■ A. The preliminary question in any due process analysis is whether the party challenging the statute has a property interest that that statute protects. *Carolan v. City of Kansas City,* 813 F.2d 178, 181 (8th Cir.1987). Nebraska law determines the nature and extent of Norwest's cause of action as a right protected by the Nebraska due process clause. *Id.; Bishop v. Wood,* 426 U.S. 341, 344 n. 7, 96 S.Ct. 2074, 2077 n. 7, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

■ Although the Nebraska Supreme Court has not specifically addressed the issue, it appears that under Nebraska law only a judgment, but not the underlying cause of action on which the judgment is based, is a property right that the state due process clause protects. In *Karrer v. Karrer,* 190 Neb. 610, 211 N.W.2d 116, 119 (1973), the Nebraska Supreme Court, holding that "[s]tatutes may not operate retroactively so as to impair vested rights," stated that "[p]rivate rights of parties which have vested by the judgment of a court cannot be taken away by subsequent legislation...." More recently, that Court stated that "[j]ust as a judgment is a vested right which cannot be impaired by a subsequent legislative act, ... so, too, is immunity granted by a completed statutory bar," and that "[t]he immunity afforded by a statute of repose is a right which is as valuable to a defendant as the right to recover on a judgment is to a plaintiff; the two are but different sides of the same coin.... These are substantive rights recognized by Nebraska law and protected by its Constitution." *Givens v. Anchor Packing,* 237 Neb. 565, 466 N.W.2d 771, 773–74 (1991). *See also Spilker v. City of Lincoln,* 238 Neb. 188, 469 N.W.2d 546, 548–49

(1991); *State Sec. Co. v. Norfolk Livestock Sales Co.,* 187 Neb. 446, 191 N.W.2d 614, 617 (1971) ("A person has no property—no vested interest—in any rule of the common law.").

■ If, as appears to be the case, the Nebraska Supreme Court would not view Norwest's mere cause of action, which Norwest contends accrued in 1970, as giving Norwest a vested property right, it follows that Norwest was not denied due process in violation of the Nebraska Constitution by the 1978 statute, imposing a ten-year statute of limitations on product liability suits. Indeed, under *Givens* and *Spilker,* it is Grace which has a vested property right, in the "immunity granted [it] by a completed statutory bar."

■ B. Assuming arguendo (1) that Norwest's cause of action accrued in 1970, when the last installation of Grace's asbestos insulation was made, rather than in 1985, when Norwest allegedly discovered the presence of the asbestos and incurred the expense of removing it and (2) that the Nebraska Supreme Court would view Norwest's cause of action as a property right that the state due process clause protects, Norwest still cannot prevail on its state due process argument. Decisions of the Nebraska Supreme Court sustaining other similar statutes of limitation against similar constitution charges indicate that that court would reject Norwest's state due process constitutional attack on the application of § 25–224 to bar Norwest's product liability suit against Grace.

In *Educational Serv. Unit No. 3 v. Mammel, Olsen, Schropp, Horn & Swartzbaugh, Inc.,* 192 Neb. 431, 222 N.W.2d 125, 127 (1974), the Nebraska Supreme Court stated:

Our law is well settled. A statute of limitations which does not impair existing substantive rights but only alters the procedural enforcement of those rights operates on all proceedings instituted after its passage, whether the rights accrued before or after that date. This has been the law since *Horbach v. Miller* (1875), 4 Neb. 31, [which states:] ...

"We think the rule is correctly laid down in the case of *Bigelow v. Bemen,* 2 Allen, [496] 497, as follows: 'It is well settled that it is competent for the legislature to change statutes prescribing limitations to actions, and that the one in force at the time the suit is brought is applicable to the cause of action. The only restriction on the exercise of this power is, that the legislature cannot remove a bar or limitation which has already become complete, and that no limitation shall be made to take effect on existing claims without allowing a reasonable time for parties to bring action before these claims are absolutely barred by a new enactment.' ..."

See also *Cedars Corp. v. Swoboda,* 210 Neb. 180, 313 N.W.2d 276, 277 (1981) ("It is generally held that a statute of limitations does not impair existing substantive rights but merely affects the procedure by which such rights may be enforced.").

Section 25-224 did not impair existing substantive rights, but "merely affect[ed] the procedure by which such rights may be enforced." The statute requires that all product liability actions be commenced within four years after the date on which the injury occurs, § 25-224(1), but also requires such an action to be commenced within ten years after the date when the offending product was first sold or leased for use or consumption. § 25-224(2). The statute also provides a two-year period following its effective date during which persons having claims on the effective date could bring suit. § 25-224(4).

*Educational Service Unit* recognized that a limitation may be "made to take effect on existing claims" as long as parties are given "a reasonable time ... to bring action before these claims are absolutely barred by a new enactment." Section 25-224 did precisely that. Its bar affected "existing claims," but gave parties two years to file suit before the claims were barred. There is no reason to conclude that the Nebraska Supreme Court would not consider the two-year grace period reasonable. *See Educational Service Unit,* 222 N.W.2d at 127-28.

If Norwest had an accrued cause of action as of July 22, 1978, the effective date of § 25-224, that statute did not impair Norwest's substantive right to bring suit against Grace. It merely affected the procedure by which Norwest could enforce its rights. The statute provided a two year period following its effective date for Norwest to bring suit; Norwest's cause of action thus remained viable until July 22, 1980, at which time the action was barred and Grace's repose interest vested.

Even accepting Norwest's claim that it was unable to discover facts enabling it to bring suit until after the limitations period had run, § 25-224 survives constitutional scrutiny. As the Nebraska Supreme Court stated in *Colton v. Dewey,* 212 Neb. 126, 321 N.W.2d 913, 916 (1982), "[n]or does due process demand an awareness of a right of action before a period of limitations has run against it." While that Court has held that "the 4-year statute of limitations set forth in § 25-224(1) begins to run on the date on which the party holding the cause of action discovers, or in the exercise of reasonable diligence should have discovered, the existence of the injury or damage," *Condon v. A.H. Robins Co.,* 217 Neb. 60, 349 N.W.2d 622, 627 (1984), nothing in the Nebraska cases indicates that this rule applies to the ten year statute of repose in § 25-224(2), which bars all actions commenced more than ten years after the product was first sold or leased for use or consumption.

We hold that application of Nebraska's ten year statute of limitations for product liability actions, which barred Norwest's suit as of July 22, 1980, and which created in Grace a vested property interest in its immunity from suit on that date, did not deprive Norwest of due process in violation of the Nebraska Constitution.

## IV.

Norwest's two other state constitutional contentions need not detain us long.

■ A. Norwest first contends that § 25-224 violates art. III, § 18 of the Nebraska Constitution, which prohibits special

legislation "where a general law can be made applicable." It argues that § 25–224 is "special legislation" because the classification in the statute, which singles out for protection manufacturers, sellers, and lessors, as distinguished from all other entities who design, formulate, install, prepare, assemble, test, package, or label products, "does not rest upon reasonable differences of situation and circumstances surrounding the members of the [protected] class." Norwest asserts that the legislature could have accomplished its objective by a general law that would have applied the limitations period to all those entities. As previously noted, Norwest states that the legislative purpose was to "assist consumers and industry through an attempt to hold down the very rapidly increasing premium rates for product liability insurance."

The Nebraska Supreme Court has stated: "A party claiming a statute is unconstitutional has the burden to show and clearly demonstrate that the questioned statute is unconstitutional.... In every constitutional challenge there attaches the presumption that all acts of the Legislature are constitutional, with all reasonable doubts resolved in favor of constitutionality." *Spilker*, 469 N.W.2d at 548 (upholding § 25–224 against state constitutional challenges) (citation omitted). "[U]nder the provisions of Neb. Const.... art. III, § 18, the Legislature may make a reasonable classification of persons for purposes of legislation concerning them, but ... the classification must rest upon real difference of situation and circumstances surrounding the members of the class, relative to the subject of the legislation, which render the enactment appropriate." *Colton*, 321 N.W.2d at 916. (upholding Neb.Rev.Stat. § 25–222 against "special legislation" clause challenge).

Norwest has not carried its burden to clearly demonstrate that § 25–224 is unconstitutional as special legislation, even assuming that holding down insurance rates was the statute's only purpose. As we have held in our discussion of the federal equal protection claim in Part II. B above, the Nebraska legislature had a reasonable basis for concluding that manufacturers, sellers, and lessors, as entities who ulti-

mately place products in the stream of commerce, are most likely to carry product liability insurance; that a ten-year statute of limitation on actions brought against them would have a beneficial effect on insurance rates; and that the consumers, manufacturers, sellers and lessors would pass on their insurance savings. Thus, there is a "difference of situation and circumstances surrounding the members of the class." Norwest has not cited any persuasive evidence to the contrary.

Norwest states that if a person is injured because a manufacturer improperly tests a product, his right to sue terminates after ten years, while a person injured by a product improperly tested by a repair shop or installer may sue after injury occurs, regardless of how many years have passed since the product was first placed on the market. Norwest, however, has shown no relationship between this hypothetical situation and the legislative purpose of § 25–224. For example, it does not cite any evidence that entities other than manufacturers, sellers, and lessors are adversely affected by product liability insurance premiums. Norwest's contentions are but another formulation of its federal equal protection arguments; they are equally unpersuasive here and are insufficient to overcome the statute's presumption of constitutionality.

■ B. Norwest next contends that § 25–224 violates Neb. Const. art. III, § 14, which provides

No bill shall contain more than one subject, and the same shall be clearly expressed in the title. And no law shall be amended unless the new act contain the section or sections as amended and the section or sections so amended shall be repealed.

Norwest argues that the title to § 25–224 is constitutionally defective because it (1) "fails to give notice that it includes a statute of repose" and (2) "fails to give notice that it amends existing statutes of limitation by providing a new statute of limitations for existing product liability claims."

The only item that Article III, § 18 requires to be expressed in the title of a statute is the "one subject" of the bill. The requirement for an amending law is only that the new Act contain the section or sections as amended. It does not require that the amendments be specified in the title. *Tom and Jerry, Inc. v. Nebraska Liquor Control Commission*, 183 Neb. 410, 160 N.W.2d 232, 238 (1968).

Section 25–224's title reads:

An Act relating to product liability actions; to authorize such actions as prescribed; to define a term; to amend sections 25–702, 25–1151, and 27–407, Reissue Revised Statutes of Nebraska, 1943; to require reports as prescribed; to provide immunity; and to repeal the original sections.

The title announces that the statute "relat[es] to product liability actions" and indicates that the act provides immunity. As the Nebraska Supreme Court has held, "it is not necessary for the title to analyze the bill in detail and it is not necessary that the title inform the readers of the specific contents of the bill." *State v. Levell*, 181 Neb. 401, 149 N.W.2d 46, 51 (1967). Moreover, the purpose of a title is "to describe the subject, not to synopsize the contents or every conceivable consequence." *Hall v. Simpson*, 184 Neb. 762, 171 N.W.2d 805, 807 (1969).

It has been more than a century since the Nebraska Supreme Court invalidated a statute under this constitutional provision. Norwest "recognizes that the Nebraska Supreme Court has somewhat liberally approached challenges to the constitutionality of statutes based on Art. III, § 14." We have no doubt that that court would hold that the title of the legislation suffices to "describe its subject", and although it does not "synopsize the contents," it puts the reader on notice that the act relates to product liability actions and provides immunity. As construed by that court, art. III, § 14 requires no more. We see no need to

certify this question to the Nebraska Supreme Court, as Norwest requests us to do.

The judgment of the district court, dismissing Norwest's suit as barred under § 25–224(2), is affirmed.