Gerald L. MEESTER, individually and as parent and next friend of Travis Meester; Connie Meester, individually and as parent and next friend of Travis Meester, Appellants,

v.

IASD HEALTH SERVICES CORP., doing business as Blue Cross of Iowa, doing business as Blue Shield of Iowa, Appellee.

No. 91–2960.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1992.

Decided April 30, 1992.

Gregg L. Owens, Dubuque, Iowa, argued (Michael J. Coyle, on the brief), for appellants.

David M. Swinton, Des Moines, Iowa, argued, for appellee.

Before FAGG, Circuit Judge, HENLEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

WOLLMAN, Circuit Judge.

Gerald Meester and Connie Meester appeal from an adverse grant of summary judgment in the action they brought to force an insurance company to pay certain benefits. We affirm.

I.

IASD Health Care Services Corp., d/b/a Blue Cross of Iowa and Blue Shield of Iowa ("Blue Cross"), offered medical insurance to members of the Iowa Medical Society (the "Society"). Members of the Society could obtain coverage for both themselves and their dependents under a variety of plans. Plan A covered a maximum of 365 days of inpatient hospitalization for mental conditions or substance abuse. Plan C provided a maximum of thirty days of such benefits.

Increasing costs and decreasing enrollment caused Blue Cross and the Society to eliminate Plan A, effective December 31, 1989. The agreement between Blue Cross and the Society regarding Plan A ("Agreement") addressed the effect of termination on the payment of benefits. It provided that if an insured was receiving inpatient treatment on the date of termination, payment of benefits would continue for the shortest of three described periods, the longest of which was sixty days from the date of termination.

The Society's insurance broker sent two notices of the termination to all Society members. The first notice was mailed in January 1989. It alerted Society members that Plan A would be "phas[ed] out" and that those covered under this option must convert "to [Plan C] or one of the other options." The notice described Plan A as "expensive," pointed out that only nine percent of the members held this coverage, and described the savings in premiums ($200 per month) for those choosing Plan C. The second notice was sent in November 1989, return receipt requested. It advised participants in Plan A that the option would be "eliminate[d]" beginning in January 1990 and that the coverage of Plan A participants would automatically convert to Plan C unless they selected some other plan. The second notice noted the difference in premiums between Plans A and C. It also described some of Plan C's characteristics, noting that Plan C covered only thirty days of inpatient treatment for "nervous/mental" and "drug/alcohol" conditions. Both notices listed a telephone

number that Society members could call if they had questions.

Dr. Gerald Meester is a physician employed by Dubuque Orthopedic Surgeons, P.C. A member of the Society, Dr. Meester subscribed to Plan A and had received from Blue Cross a booklet describing his coverage. He does not dispute having received both notice letters regarding the phase-out of Plan A, but he did not respond to either one. Blue Cross converted his coverage from Plan A to Plan C effective January 1, 1990.

Travis Meester, Dr. and Mrs. Meester's son, was admitted to a hospital in October 1989 for inpatient treatment of mental health and substance abuse problems. Blue Cross paid the cost of Travis Meester's hospitalization for sixty-one days after the Meesters' coverage was converted from Plan A to Plan C.

Dr. and Mrs. Meester sued Blue Cross, claiming that Blue Cross should have paid benefits for more than sixty-one days. The district court granted Blue Cross' motion for summary judgment, and the Meesters appeal.

## II.

"In reviewing a grant of summary judgment, we apply the same standard as that applied by the district court. We thus will affirm the lower court's grant of summary judgment if there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *Meyer v. Barnes*, 867 F.2d 464, 466 (8th Cir.) (citations omitted), *cert. denied*, 493 U.S. 825, 110 S.Ct. 86, 107 L.Ed.2d 51 (1989).

■ The Meesters assert that genuine issues of material fact exist. First, they note that the Employee Retirement Income Security Act (ERISA) requires that plan participants receive a summary of any material modification in the terms of a plan that may result in the denial or loss of benefits. *See* 29 U.S.C. § 1022(a), (b). According to the Meesters, the letter notices violate this requirement because they do not describe the substituted coverage or explain the effects of conversion on preexisting hospitalization.

We agree with the district court that the notice letters satisfied the requirements of ERISA. The first letter referred to the "phasing out" of Plan A, and the second letter said that Plan A would be "eliminate[d]." The second letter informed the Meesters that their insurance coverage would automatically convert from Plan A to Plan C unless they chose otherwise. The second letter also notified the Meesters that Plan C would only cover thirty days of inpatient treatment for mental or substance abuse problems. We perceive no genuine issue of material fact regarding the letters' compliance with ERISA.

Second, the Meesters assert that the Agreement between Blue Cross and the Society, the booklet, and the notice letters together comprised their insurance contract. Summary judgment is inappropriate, they argue, because the contract contains ambiguities that must be resolved as questions of fact.

The Meesters suggest that the use of the term "convert" in the letters, rather than the term "terminate," generates ambiguity because it could lead them to believe that they would receive equivalent coverage under a new plan, not reduced coverage. The second letter, however, explicitly describes several elements of Plan C, such as the reduced inpatient medical coverage. Since the letter describes the characteristics of Plan C, the Meesters could not reasonably expect that the elimination of Plan A and conversion to Plan C would result in identical coverage. In this context, therefore, use of the term "convert" created no ambiguity.

The Meesters also argue that the contract contains ambiguity because the Agreement describes the authority for and effects of terminating Plan A, whereas the booklet does not. The Meesters argue that this supposed ambiguity should be construed against the insurer and that coverage should therefore continue for a full year from the date of Travis Meester's hospitalization. Alternatively, the Meesters argue that we should enforce their

reasonable expectation that Plan A would cover a full year of treatment if that treatment commenced before termination of Plan A.

 We, like the district court, perceive no ambiguity. The booklet's lack of a description of the specific effects of termination does not support the inference that treatment commenced before termination would be covered for a full year. There is therefore no occasion to apply the contra insurer or reasonable expectation doctrines, both of which are general rules of contract construction not specific to the insurance industry. *See Delk v. Durham Life Ins. Co.*, 959 F.2d 104 (8th Cir.1992) (per curiam); *Brewer v. Lincoln Nat'l Life Ins. Co.*, 921 F.2d 150 (8th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991).

Third, the Meesters maintain that the letters did not adequately notify them that their own coverage would be converted because the letters referred to the elimination of the "Full Benefits" option, while the booklet referred to the coverage as "Option A." Our review of the record indicates that this argument was not squarely presented to the district court, and thus it is not properly before us. *See Daley v. Webb*, 885 F.2d 486, 488 (8th Cir.1989). In any event, Dr. Meester stated in his affidavit, "I was not advised that my coverage would be terminated, but rather that my coverage would be converted...." (emphasis deleted). This statement indicates that the letters' references to the "expensive" "Full Benefits" option did in fact alert the Meesters that their Plan—Plan A—was the one slated for conversion.

 Finally, the Meesters argue that their right to continuing insurance coverage vested once their son began receiving treatment. Thus, they argue, they are entitled to up to 365 days of coverage under Plan A. We have held, however, that welfare benefit plans (as opposed to pension plans) may be terminated at any time in the absence of a specific expression of contrary intent by the employer. *Howe v. Varity Corp.*, 896 F.2d 1107 (8th Cir.1990). No such expression appears here.[1]

Having concluded that Blue Cross properly terminated the Meesters' coverage under Plan A, we next address whether Blue Cross has satisfied its liability to the Meesters. According to the Agreement between Blue Cross and the Society, Blue Cross was obligated under Plan A to pay for up to sixty days of treatment following termination. Blue Cross has paid for sixty-one days of treatment. We therefore find no genuine issue as to whether Blue Cross has satisfied its liability.

The judgment of the district court is affirmed.

---

1. The Meesters also argue that Blue Cross should be equitably estopped from denying coverage because the letters violated ERISA by misleading them and because the terms of the Agreement conflict with the terms of the booklet. We reject these arguments as without merit.