# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 95-2762MN

_____

Liberty State Bank, a Minnesota      *
banking corporation,      *
     *
           Appellant,      *
     *    Appeal from the United States
      v.      *    District Court for the District
     *    of Minnesota.
Minnesota Life and Health Insurance      *
Guaranty Association; Minnesota      *
Commissioner of Commerce,      *
     *
           Appellees.      *

_____

Submitted: May 14, 1998
Filed: July 13, 1998

_____

Before RICHARD S. ARNOLD, JOHN R. GIBSON, and FAGG, Circuit Judges.

_____

FAGG, Circuit Judge.

In this action to recover losses on municipal bonds backed by a defunct insurer, bondholder Liberty State Bank appeals the district court's grant of summary judgment to the Minnesota Life and Health Insurance Guaranty Association and the Minnesota Commissioner of Commerce. We affirm.

In 1977, the Minnesota Life and Health Insurance Guaranty Association Act created the Minnesota Life and Health Insurance Guaranty Association, a nonprofit entity consisting of all life and health insurance companies operating in Minnesota, to guarantee the covered policies of member companies in the event of insolvency. See Minn. Stat. §§ 61B.01-.16 (1992). Eight years later, the Minnesota legislature authorized the issuance of a new type of insurance product known as a "funding agreement." See Minn. Stat. § 61A.276 (1996). Executive Life Insurance Company, a California company operating in Minnesota, began selling municipal guaranteed investment contracts ("muni-GICs"), investment and funding agreements that back the obligations of municipal bond issuers as a form of collateral, to the trustees of municipal bond issuers in Minnesota. Liberty invested in municipal bonds backed by Executive Life's muni-GICs. After Executive Life became insolvent and defaulted on payments owing to the trustees, the bonds lost value and Liberty suffered investment losses. In January 1992, Liberty sought reimbursement from the Association under the Act, and the Association denied Liberty's claim, stating the Act did not cover municipal bond funding agreements. While Liberty's administrative appeal was pending, the Minnesota legislature enacted a clarifying, retroactive amendment expressly excluding muni-GICs from the Act's coverage. See Minn. Stat. § 61B.03, subd. 5(d) (1992). Relying on the amendment, the Minnesota Commissioner of Commerce upheld the Association's denial in a final agency decision. Liberty appealed to the Minnesota Court of Appeals, and the Association removed the case to federal court.

In the federal district court, the parties filed cross motions for summary judgment based on the agency record. Liberty asserted only that applying the amendment to its claim violates substantive due process because the amendment's application deprives Liberty of a protected property right to payment under the Act. The district court rejected Liberty's claim. In response to a certified question posed by the district court, the Minnesota Supreme Court held the right to payment under the Act is a purely statutory right, see Honeywell, Inc. v. Minnesota Life & Health Ins. Guar. Ass'n, 518 N.W.2d 557, 563 (Minn. 1994), which can be retroactively modified or eliminated

unless vested, see Hammond v. United States, 786 F.2d 8, 11-12 (1st Cir. 1986). Based on its own analysis of the Act, the district court decided any statutory right to payment did not vest until the Minnesota Commissioner of Commerce decided Liberty's appeal. Because that did not happen until after the Act's amendment, Liberty had no vested right to payment under the pre-amendment Act, and the amendment's retroactive application to Liberty's claim did not deprive Liberty of a vested property right in violation of substantive due process.

Rather than challenging the basis for the district court's decision, Liberty takes a different approach for the first time on appeal. Liberty asserts application of the retroactive amendment to its claim violates the Contracts Clause, U.S. Const. art. I, § 10, cl.1, because the amendment relieved the Association of its contractual obligation to guaranty payments based on muni-GICs. Liberty also contends the 1992 amendment violates due process for a new reason--because the amendment arbitrarily eliminates coverage for muni-GICs without furthering any legitimate state interest. Although Liberty had raised a due process claim based on vested rights, the district court expressly noted that Liberty had not challenged the amendment's purpose or rationality.

Because Liberty did not assert its claims in the district court, we need not consider them. "A district court should be specifically informed of the precise constitutional issues that a litigant wants it to decide." Norwest Bank Neb., N.A. v. W.R. Grace & Co.--Conn., 960 F.2d 754, 757 (8th Cir. 1992). Thus, we do not consider constitutional arguments raised for the first time on appeal absent exceptional circumstances, see id., such as when the proper result is clear or when our failure to consider the new issue would result in injustice, see Von Kerssenbrock-Praschma v. Saunders, 121 F.3d 373, 376 (8th Cir. 1997). Liberty acknowledges its failure to raise the issues below, but asserts we should exercise our discretion to consider them because of the unique facts of this case. Liberty says the parties and the district court were aware of the issues because they had already been raised in a case involving a different retroactive amendment to the same Act. See Honeywell, Inc. v. Minnesota

Life & Health Ins. Guar. Ass'n, 110 F.3d 547, 556-57 (8th Cir.) (en banc) (holding retroactive amendment specifically excluding nonresident benefit plan participants from Act's coverage did not violate substantive due process or the Contract Clause), cert. denied, 118 S. Ct. 156 (1997).  A district court's awareness of potential issues does not alleviate a party's duty to raise them, however.  Liberty adds that before we resolved the Honeywell appeal en banc, it was not clear that the rational basis test applied to its substantive due process claim, see id. at 554-55, and the weight of authority held the right to reimbursement under the Act was statutory rather than contractual in nature, see id. at 557, 560 (concurring and dissenting opinions form majority concluding right to reimbursement under Act is contractual, contrary to state court's earlier holding).  Parties are required to raise claims to preserve them, however, even when the controlling law is unclear or the claims are against the weight of existing authority.

Under Honeywell, Liberty's claims fail on the merits anyway.  To satisfy substantive due process, the amendment's retroactive application need only be justified by a rational legislative purpose.  See id. at 555.  As we said in Honeywell, Minnesota has a legitimate interest in regulating the insurance industry and in ensuring the Association's economic life.  See id.  We held the Minnesota legislature can retroactively amend its guaranty association statute to cure drafting defects, to avoid unintended benefits or consequences, and to assure adequate funding of the Association's operations.  See id.  We deemed retroactive amendment a rational way to achieve the state's legitimate goals.  See id. at 556.  Further, to decide Liberty's Contract Clause claim, we consider whether the amendment has a legitimate public purpose, then defer to the Minnesota legislature's judgments about the remedy's reasonableness.  See id. at 559.  "[I]t is reasonable to amend a statute to eliminate unforeseen consequences or windfall benefits, even if [the amendment] impairs existing contracts."  Id.

Like the amendment in <u>Honeywell</u>, the amendment here was an appropriate curative measure designed to clarify appropriate coverage for a product that was unanticipated when the Act was initially passed in 1977. <u>See</u> <u>id.</u> at 555-56. Because funding agreements were not sold in Minnesota when the Act was first enacted, the legislature probably did not consider how the Act specifically applied to them, and claims to recover investments in muni-GICs posed a substantial unforeseen consequence. <u>See</u> <u>id.</u> at 555-56, 559. Eliminating the unforeseen benefit that limited Association funds would be used to bail out losses incurred by bond traders like Liberty justifies the retroactive amendment in this case. We thus conclude retroactive application of the amendment stating the Act does not cover muni-GICs does not violate substantive due process or the Contract Clause.

We affirm the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.