**Lawrence DeREMER, et al.,**
**Respondents,**

v.

**PACIFIC INTERMOUNTAIN EXPRESS COMPANY, et al., Appellants.**

**No. C0–84–167.**

Court of Appeals of Minnesota.

Aug. 28, 1984.

Randall Berkland, Mankato, for respondents.

Timothy Waldeck, Minneapolis, for appellants.

Heard, considered and decided by SEDGWICK, P.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

SEDGWICK, Judge.

Plaintiffs Lawrence and Mavis DeRemer brought an action to recover for personal injuries sustained in a car accident allegedly due to the negligence of defendant Pacific Intermountain Express Company's driver, Harold Snyder. A jury returned a verdict finding Lawrence DeRemer 11% negligent and Snyder 89% negligent, and assessing $126,300 in damages.

Defendants moved for judgment notwithstanding the verdict or a new trial on the issue of damages, or for remittitur to $20,000 or $25,000.

The trial court denied the motion for judgment n.o.v. but granted the motion for a new trial on damages unless the plaintiffs agreed to a reduction of the verdict to $90,157. Plaintiffs agreed to the reduction, judgment was entered, and this appeal was filed. We affirm.

## FACTS

The two-car collision occurred in South Dakota about one-half mile west of the Minnesota-South Dakota border on a straight stretch of I-90 that has a slight downgrade. At the time of the accident the skies were sunny and clear, and the road was dry.

DeRemer, 62, was driving and his wife, 60, was a passenger. They are residents of Minnesota. Pacific Intermountain Express company is a Nevada corporation licensed to do business in Minnesota.

The DeRemers had just come off an entrance ramp and were proceeding west in the right lane of the four lane highway for about 2/10 of a mile when they were rear-ended by the truck Harold Snyder was driving. The DeRemers were traveling about 40-50 m.p.h. when they were hit. From the time DeRemer entered the highway from the entrance ramp until he was hit (2/10 mile later) he did not look in his rear view mirror. However, he looked in his side mirror while leaving the entrance ramp.

After the collision, South Dakota Highway Patrol Trooper John Paul arrived at the scene, took measurements of the skid marks, and talked with the DeRemers. There were no eyewitnesses other than the DeRemers. There is no evidence as to the truck's speed. Harold Snyder was killed.

DeRemers' car ended up in a ditch about 196 feet from where the skid marks started. The truck left skid marks for about 430 feet before hitting a bridge abutment and coming to a stop.

DeRemer was taken to a South Dakota hospital for treatment. He was released that same day. As a result of the accident he has permanent neck and upper back disability of between 7% and 15% disability, depending on which witness is believed.

Before the accident, DeRemer was in good physical condition. He worked as a bulk oil dealer for Standard Oil for almost 30 years, delivering truckloads of gas to the various Standard stations. He was paid commissions based on the quantity of petroleum products he sold. He also installed and repaired furnaces as a side business.

He testified that this service was "more or less a free service with the business" of hauling gas, and that he did not receive any additional income from this work until after 1976. However, Income Tax Schedules C, reflecting supplemental income and attached to his returns for the last couple of years he was with Standard, show that he was paid for his services. During those years his hourly rate was $6 per hour, it is now $12 per hour. Presently, he can only work a couple of hours at a time because of his condition.

Installing furnace systems involves putting duct work into basement ceilings. Repairing furnaces requires kneeling and reaching into the furnace to do the repairs.

Because of the strain on his neck and upper back he can not do any work over his head or straight out in front of him. Therefore, he no longer does installation work. He no longer participates in golf, gardening or a number of other activities he did before the accident.

Additionally, he now has pain assisting his wife who is confined to a wheelchair (not related to this accident). To relieve his discomfort he does 15 minutes of therapy every day.

Although Mavis DeRemer sustained no injuries as a result of this accident, she made a claim for loss of consortium and loss of services.

Before trial appellants brought a motion in limine to restrict the testimony of Trooper John Paul. They also requested application of South Dakota law regarding the presumption of due care and contributory negligence. These motions were denied.

The issues on appeal are:

## ISSUES

1. Does the South Dakota law of contributory negligence or the Minnesota law of comparative negligence provision apply to this case?

2. Did respondent's proof concerning loss of earnings and earning capacity surprise appellant so as to require a new trial?

3. Did the trial court properly admit Trooper Paul's opinion testimony?

4. Is the verdict supported by the evidence?

## ANALYSIS

1. In *Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408 (1973) the court adopted the choice-of-law methodology first enunciated by Professor Robert Leflar in his article *Choice-Influencing Considerations in Conflicts Law*, 41 N.Y.U.L.Rev. 267, 279. Leflar's approach is a flexible one which takes into account policy as well as factual considerations in arriving at the choice of law in a given situation.

The relevant considerations in tort cases are two: (1) advancement of the forum's governmental interests; and (2) application of the better rule of law.

Advancement of the forum's governmental interests contemplates application both in terms of factual contacts with the forum and in terms of the state's policy considerations relevant to its choice of law.

In *Schwartz v. Consolidated Freightways Corp. of Del.*, 300 Minn. 487, 221 N.W.2d 665 (1974), the court applied the principles set forth in *Milkovich* and found Minnesota governmental interests sufficient to apply the Minnesota comparative negligence statute rather than the contributory negligence law of Indiana.

■ Here, as in *Schwartz,* plaintiffs are lifelong residents of Minnesota. The car DeRemer was driving was licensed, registered, maintained and insured in Minnesota, and the trip which brought them to South Dakota originated in Minnesota and was to terminate in Minnesota. He had a Minnesota driver's license. DeRemer received medical care in Minnesota for the injuries sustained in the accident. He resides in Minnesota, saddled with his physical disabilities arising from the collision. Thus, as in *Schwartz,* the economic impact of these injuries and of subsequent litigation will be felt by Minnesota residents. In addition, defendant corporation, although foreign to Minnesota, is licensed to do business in this state and exercises this privilege. Minnesota, therefore, has a clear governmental interest in the outcome of plaintiff's case.

South Dakota, on the other hand, has a much less substantial governmental interest. The only facts linking this accident to South Dakota are that the accident occurred in South Dakota and plaintiff received initial medical attention there.

Since factual contacts and policy considerations creating a Minnesota interest in the instant case are similar to those in *Schwartz,* we affirm the trial court's decision to apply Minnesota's comparative negligence law rather than South Dakota's contributory negligence law.

■ The remaining test under *Milkovich* is the application of the better rule of law. Concern for the "better law" is part of a comprehensive test and is to be exercised only when the choice-influencing considerations leave the choice of law uncertain. *Myers v. Government Employees Ins. Co.,* 302 Minn. 359, 225 N.W.2d 238, 244 (1974).

Here, the factual contacts with the forum and state policy considerations dictate that Minnesota comparative negligence law apply. Therefore, we need not consider or make any choice of better law under these facts.

2. Appellants claim they are entitled to a new trial because they were surprised when respondents offered evidence of DeRemer's tax returns from the last couple of years before his retirement which reflected supplemental income from his sideline job of repairing furnaces. Appellants claim the first they knew of DeRemer's claim for lost earnings and lost earning capacity based on the sideline business was at trial.

However, the complaint sets out a general claim for lost earnings and many of the discovery documents inquire about the same. Although respondents did not produce the requested Tax Schedules C before trial, a letter written by appellant's attorney before trial proves that they were aware of tax Schedule Cs existence.

Additionally, appellants had a list of experts respondent intended to call and a summary of their testimony which indicated DeRemer made money from his sideline business.

■ Appellants did not object to the schedules being offered into evidence, nor did they make a claim of surprise, nor did they ask for a continuance. Therefore, the trial court did not err in denying appellants motion for a new trial based on its claim of surprise.

3. Appellants next claim the court erred in admitting Trooper Paul's testimony regarding his opinion as to the point of impact.

■ The determination of whether a witness is sufficiently qualified to testify as an expert is left to the sound discretion of the trial court, whose ruling will not be reversed unless it is based on an erroneous view of the law or is clearly not justified by the evidence. *Hueper v. Goodrich,* 263 N.W.2d 408 (Minn.1978).

■ It is generally not necessary that an expert witness be the most qualified person in the field in order to render an opinion at trial. All tht is necessary is that the expert have some specialized knowledge or training which will be of some assistance to the jury. *Id.* at 411. That knowledge may be gained through formal education or through years of occupational experience.

*Beckman v. Schroeder,* 224 Minn. 370, 28 N.W.2d 629 (1947).

In *Beckman* the court reversed the trial court for admitting the testimony of a deputy sheriff who investigated the two-car accident on a highway and testified as to the point of collision. The court found the trooper did not possess special information or knowledge on the subject superior to that of an average person, such that his testimony would be of assistance to a jury.

Any other rule would soon lead to trial by experts instead of by witnesses, and jury trials as we have known them would soon be a thing of the past. *Carmody v. Aho,* 251 Minn. 19, 86 N.W.2d 692 (1957).

Trooper Paul's opinion was based on the following facts:

—the length and direction of the skid marks on the road

—the road and weather conditions

—the slope of the road and terrain

—the speed limits

—the speed at which DeRemer was traveling just prior to impact

—the position of the cars after the accident

—the damage to the cars after the accident

—the directions the cars were initially traveling

—the testimony of Mr. DeRemer.

Similar facts were in evidence in *Beckman* and *Carmody.* In both cases the court held the facts were understandable to jurors of average intelligence, therefore, expert testimony was inadmissible to show how and where an accident took place, or the position of the automobiles.

■ The question then becomes did his opinion testimony so permeate the case as to require a new trial. The trooper's and DeRemer's testimony was similar and unrebutted. Also, the facts of this case clearly justify the jury's verdict irrespective of the objectionable testimony. The error was not so prejudicial as to require a new trial.

4. Appellants contend that the verdict in favor of plaintiffs is excessive even as reduced by the trial court.

■ An appellate court will not set aside a trial court's decision allowing a jury verdict to stand against a claim that the verdict is excessive, unless the trial court's exercise of its discretion allows an unreasonable verdict to stand. *DeWitt v. Schuhbauer,* 287 Minn. 279, 177 N.W.2d 790 (1970).

■ There are no fixed standards by which this determination can be made. *Tuominen v. Waldholm,* 301 Minn. 492, 221 N.W.2d 709, 710 (1974). Each case must be examined by itself. A jury's award cannot be justified or discredited by comparison to other verdicts. *Ahrenholz v. Hennepin County,* 295 N.W.2d 645 (Minn.1980).

There is ample evidence indicating a negative change in DeRemer's lifestyle since this accident. Considering the DeRemers present circumstances, there is no merit to appellant's claim that the verdict was the product of passion or prejudice. We affirm the trial court's remittitur to $90,157.

■ The circumstances include: the age of the parties; DeRemer's inability to do the kind of work for which he is trained; the grim prospects for his future employment; the pain he experiences; his pain and inconvenience in having to do therapeutic exercises every day; his inability to participate in sports and help out with many of the household chores he used to do; Mavis DeRemer's loss of companionship during the months DeRemer was recovering; and other inconveniences the parties now have to live with.

### DECISION

We affirm the trial court's decision.