**Jill NESLADEK, as Trustee for Heirs and Next of Kin of Jeremy J. Nesladek, Decedent, Appellant,**

v.

**FORD MOTOR COMPANY, Appellee.**

No. 94–1885.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1994.

Decided Jan. 26, 1995.

David F. Herr, Minneapolis, MN, argued (William H. McDonald, Springfield, MO and Eric W. Kruger, Omaha, NE, on brief) for appellant.

Hildy Bowbeer, Minneapolis, MN, argued (Douglas S. Laird, Kansas City, MO and Michael J. O'Reilly, Dearborn, MI, on brief), for appellee.

Before BOWMAN, Circuit Judge, LAY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

BOWMAN, Circuit Judge.

Jill Nesladek, as trustee for the heirs and next of kin of her son Jeremy, appeals the decision of the District Court[1] granting Ford Motor Company's motion for summary judgment and dismissing her complaint with prejudice. We affirm.

## I.

On April 18, 1990, near West Point, Nebraska, Jeremy's father Ken Nesladek started the family's Ford pickup truck, preparing to take three-year-old Jeremy and Jeremy's younger brother Dustin to day care. With Dustin in the truck, Ken Nesladek realized Jeremy and his toy wagon were behind the truck and left the vehicle to move the wagon and retrieve his son. As he proceeded to do so, the truck moved backward and rolled over Jeremy, severely injuring him. Jeremy died from his injuries about two years later on February 20, 1992, at the family farm in Nebraska.

After Jeremy's death, the Nesladeks moved to Minnesota. Jill Nesladek brought this wrongful death suit in Minnesota state court. Ford removed the case to federal court and moved for summary judgment, arguing that Nesladek's claim was barred by Nebraska's ten-year statute of repose applicable to products liability actions. The Dis-

---

1. The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

trict Court granted Ford's motion and Nesladek appeals, 876 F.Supp. 1061. We review *de novo* the decision to enter summary judgment.

## II.

All agree that this is a conflict of laws case. Under Nebraska law, which the District Court applied in dismissing the claim, "any product liability action," with some exceptions not relevant here, "shall be commenced within ten years after the date when the product which allegedly caused the personal injury, death, or damage was first sold or leased for use or consumption." Neb.Rev. Stat. § 25–224(2) (1989). The truck at issue was a composite of two vehicles, combined in 1989 by Ken Nesladek and Harvey Kreikemeirer: a 1976 Ford model F–250 cab on a 1973 Ford model F–350 chassis. Thus, under Nebraska law, Nesladek cannot maintain this action, as it was precluded by the statute of repose in 1986 (ten years after the 1976 model was first sold) at the latest. Because ten years elapsed before the accident occurred, a cause of action never accrued.

Minnesota's approach to the issue of liability for injury, death, or damage allegedly caused by aged products is its "useful life" statute. Under that statute, "it is a defense to a [products liability] claim against a designer, manufacturer, distributor or seller of the product or a part thereof, that the injury was sustained following the expiration of the ordinary useful life of the product." Minn. Stat. § 604.03 subd. 1 (1992). "The useful life of a product ... is the period during which with reasonable safety the product should be useful to the user." *Id.* § 604.03 subd. 2. The fact-finder considers, *inter alia,* wear and tear, subsequent industry developments, conditions of use, the manufacturer's stated useful life, and user modification of the product. *Id.* Minnesota's useful life statute would not necessarily be dispositive of Nesladek's claim; rather, it would be for the jury to decide whether the truck's useful life had expired before the accident in question occurred. *See Hodder v. Goodyear*

*Tire & Rubber Co.*, 426 N.W.2d 826, 832 (Minn.1988) (en banc), *cert. denied,* 492 U.S. 926, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989).

There being no question that this case presents a true conflict of laws, *see Lommen v. City of East Grand Forks,* 522 N.W.2d 148, 149 (Minn.Ct.App.1994), we proceed to the next step of our analysis.

## III.

 Federal courts sitting in diversity apply the forum state's conflict of laws rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Under Minnesota law, the first issue that must be resolved before we may choose between Nebraska and Minnesota law is whether the law at issue is substantive or procedural. If the law is procedural, then we apply the law of the forum state. If, on the other hand, it is substantive, the choice of law analysis continues to the next step. *Gate City Fed. Sav. & Loan Ass'n v. O'Connor,* 410 N.W.2d 448, 450 (Minn.Ct.App.1987). Minnesota law controls the substantive/procedural determination. *Id.*

 In Minnesota " '[i]t has long been recognized that substantive law is that part of law which creates, defines, and regulates rights, as opposed to "adjective or remedial" law, which prescribes method [sic] of enforcing the rights or obtaining redress for their invasion.' " *Zaretsky v. Molecular Biosystems, Inc.,* 464 N.W.2d 546, 548 (Minn.Ct. App.1990) (quoting *Meagher v. Kavli,* 251 Minn. 477, 88 N.W.2d 871, 879–80 (1958)). Nebraska's statute of repose, at least as it applies to cases like this one in which the injury-causing accident does not occur until after the ten-year repose period has expired, and Minnesota's useful life statute are relatively easy to classify under this test, and we hold that they are substantive law.[2]

 Under Minnesota law, "statutes of limitations relate to remedy" and therefore are procedural, so that the period of time

---

2. Most courts that have been faced with the question have found statutes of repose to be substantive law for conflict of law purposes. *See*

4 American Law of Products Liability 3d § 47:55 at 89 & n. 22 and cases cited therein (1990).

after accrual within which a party may bring an action is controlled by Minnesota law if the forum is in Minnesota. *United States Leasing Corp. v. Biba Info. Processing Servs., Inc.*, 436 N.W.2d 823, 826 (Minn.Ct. App.1989). A statute of repose, on the other hand, directly impacts on the accrual of a cause of action in the first instance.[3] It operates as a statutory bar independent of the actions (or inaction) of the litigants—often before those litigants can even be identified. *See Zaretsky*, 464 N.W.2d at 550 (finding prejudgment interest statute procedural because, *inter alia*, it "applies to the relationship of the parties as litigants"). Although the Nebraska statute of repose does not create rights, it is no less substantive because it imposes a disability upon potential claimants. Or, viewed another way, it creates in the potential products-liability defendant a right to immunity from suit under the circumstances set out in the statute. *See Norwest Bank Neb., N.A. v. W.R. Grace & Co.—Conn.*, 960 F.2d 754, 759 (8th Cir.1992) (interpreting Nebraska law). The statute of repose "regulates rights," not remedies. It does not dictate a "method of enforcing the rights or obtaining redress for their invasion." *Zaretsky*, 464 N.W.2d at 548 (quoting *Meagher*, 88 N.W.2d at 880). Rather, its effect is that ten years after a product first is sold *there can be no rights* to enforce, regardless of any subsequent injury related to the product's use. *Cf. Stern v. Dill*, 442 N.W.2d 322, 324 (Minn.1989) (finding a

Minnesota statute to be procedural for purposes of extending filing deadlines because "it does not change [plaintiff's] basic right to sue for negligence"). By the same token, Minnesota's useful life statute regulates the rights of a defendant in a products liability suit, that is, it creates the right to present a substantive defense—the useful life defense—to such a suit. "Expiration of useful life is a defense" and "a factor to be weighed by the jury in determining the fault of the manufacturer and the fault of the user." *Hodder*, 426 N.W.2d at 832. It is no more a procedural bar—a statute of limitations type of defense—than is the Nebraska statute of repose.[4]

■ Nebraska's characterization of its own statute, while not dispositive because we are applying Minnesota law, is to be considered under the choice-of-law analysis used by the Minnesota courts. *See Myers v. Government Employees Ins. Co.*, 225 N.W.2d 238, 241 (Minn.1974) (considering decisions from Louisiana state courts when deciding whether a Louisiana law was substantive or procedural); *see also Mason v. Spiegel, Inc.*, 610 F.Supp. 401, 404 n. 2 (D.Minn.1985) (noting that in a conflict of laws case Minnesota "will be guided, at least partially," by a state's characterization of its own law as substantive or procedural). Nebraska state courts have yet to squarely hold *in a conflicts case* that Neb.Rev.Stat. § 25–224(2) is substantive rather than procedural law. Nevertheless,

**3.** At oral argument, the Court engaged counsel in a colloquy concerning the possibility of equitable tolling of a statute of repose, for reasons such as infancy or fraud. The Court questioned whether a statute of repose can be tolled, and, if so, whether it still can be substantive law. We do not decide those questions because they are of no consequence to this case. The accident at issue here occurred outside the ten-year repose period, long after the statute of repose barred the accrual of any cause of action based on injury, death, or damage caused by the truck. The elements of fraud could never be met so as to toll the ten years because there could be no reliance on fraudulent statements that might cause Nesladek to sleep on her rights—because, by the time of the accident, she had no such rights. Further, if Jeremy had survived and brought his own action, again there would be no tolling for his infancy because the ten-year period was long past when the accident occurred—in fact, it may well have expired before Jeremy was even born. A statute

of repose is different from a statute of limitations in this regard because a tort limitations statute does not begin to run until the injury, death, or damage occurs—or until the cause of action accrues. On the other hand, a statute of repose prevents the cause of action from accruing in the first place. It may be that, if an action accrues within Nebraska's ten-year products liability repose period, the barring of a suit brought outside the ten years is in effect a procedural bar, and the repose statute would be subject to tolling. But such is not the case here, and that possibility does not change our decision that the statute of repose, as applied to the facts of this case, is substantive law.

**4.** Indeed, Nesladek does not even suggest that the Minnesota useful life statute is a procedural law. It thus appears to be conceded that it is substantive for purposes of Minnesota's choice-of-law analysis.

the comments that courts have made as regards the statute leave little doubt about how they would rule if faced with the question. For example, the Nebraska Supreme Court has described the "immunity afforded by a statute of repose" as "a right which is as valuable to a defendant as the right to recover on a judgment is to a plaintiff." *Givens v. Anchor Packing, Inc.*, 237 Neb. 565, 466 N.W.2d 771, 774 (1991). "These are *substantive rights* recognized by Nebraska law and protected by its Constitution." *Id.* (emphasis added); *see also Norwest Bank*, 960 F.2d at 759. We think it clear that Nebraska state courts see the Nebraska statute of repose as substantive law.

Finally, we note that the Minnesota Court of Appeals on at least one occasion has noted its disinclination "to classify anything as procedural because of the potential that doing so will encourage forum shopping." *Zaretsky*, 464 N.W.2d at 550 n. 2. Both Nesladek and her husband admitted that they moved to Minnesota in part because they had consulted an attorney and were aware that under Nebraska law their case was a non-starter, whereas Minnesota's law was more favorable to a suit against Ford.[5] Thus forum shopping clearly is a factor in this case, which further reduces any possibility that a Minnesota court would classify either of the statutes at issue here as procedural.

Having determined that the Minnesota courts would characterize the statutes in question as substantive does not end our inquiry; it means only that we do not automatically apply Minnesota law. We must now go forward and, applying Minnesota's choice-of-law rules, determine whether Nebraska or Minnesota law applies.

## IV.

■ In 1973, the Minnesota Supreme Court adopted Professor Robert A. Leflar's choice-influencing considerations for choice of law analysis. *Milkovich v. Saari*, 203 N.W.2d 408 (Minn.1973) (en banc). The District Court applied these considerations in reaching its conclusion that Nebraska's substantive law governs this case. The Leflar analysis includes five factors, and we consider each in turn.

### A. Predictability of Result

As in most tort cases, predictability of result is of little relevance here. *See Lommen*, 522 N.W.2d at 150. This factor goes to whether the choice of law was predictable before the time of the transaction or event giving rise to the cause of action, not to whether that choice was predictable after the transaction or event. By definition, accidents are unplanned, so in the ordinary tort case the parties can claim no legitimate expectation that a certain state's law would apply in an action on an unanticipated event.

### B. Maintenance of Interstate Order

Nesladek would have us ignore this factor as irrelevant in tort cases.[6] It is true that some Minnesota opinions dealing with this issue in tort cases skip the analysis of this consideration (the first three considerations, in fact). But the Minnesota Court of Appeals as recently as September 1994 considered all five factors (the first to a lesser

---

**5.** The other reasons given were Nesladek's desire to attend school at St. Scholastica in Duluth, which, according to Ford's brief at 23 (and unchallenged by Nesladek), she never has done, and the family's desire to move away from the site of the accident and Jeremy's eventual death.

**6.** Nesladek's main brief and her reply brief include this quotation: "[T]he *Milkovich* line of cases involving foreign torts makes the advancement of the forum's governmental interest and better rule of law *the only* relevant considerations." Appellant's Brief at 9; Appellant's Reply Brief at 6 (minor misquote in Reply Brief) (emphasis added by Nesladek in Reply Brief).

The briefs cite *DeRemer v. Pacific Intermountain Express Co.*, 353 N.W.2d 694, 697 (Minn.Ct.App. 1984). There is no such quotation anywhere in that opinion. We do find the quoted language in *Hague v. Allstate Ins. Co.*, 289 N.W.2d 43, 48 (Minn.1979), *aff'd*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981), but it is preceded by this phrase, which Nesladek conveniently omits: "Plaintiff argues, and the trial court agreed, that...." This selective quoting is very misleading to the Court. The *Hague* court was not adopting such a rule but was merely stating the plaintiff's argument. In fact, the court, noting that the case had elements of both tort and contract, looked at all five factors.

degree) in a tort case, noting only that "[t]ort actions generally do not implicate party expectations," *id.* at 150, and discussing the remaining factors at some length. *Id.* at 150–53. We reject Nesladek's contention that Minnesota law *per se* precludes the application of any of the five Leflar factors in tort cases.

In the circumstances of this case, this consideration becomes quite relevant. "[M]aintenance of interstate order [in tort cases] is generally satisfied as long as the state whose laws are purportedly in conflict has sufficient contacts with and interest in the facts and issues being litigated." *Myers,* 225 N.W.2d at 242. The record here does not support the choice of Minnesota law on this ground.

Although not so limited so as to precipitate a constitutional challenge from Ford (Ford does do business in Minnesota), Minnesota's contacts with this litigation nevertheless are tenuous, essentially limited to two: (1) Nesladek now lives and serves as trustee of Jeremy's estate in Minnesota, and (2) the allegedly defective automatic transmission gear selection system, while manufactured and assembled in Indiana, was installed into the 1976 truck in Ford's St. Paul, Minnesota, assembly plant. The composite truck owned by the Nesladeks was not purchased, licensed, modified, or maintained in Minnesota. The accident did not occur in Minnesota, none of Jeremy's medical treatment took place in Minnesota, and no medical expenses were incurred in Minnesota. All of the foregoing events took place in Nebraska, except for a brief period of rehabilitation treatment for Jeremy in Texas. Minnesota thus has little "interest in the facts and issues being litigated." *Id.*

In determining the relevance of the maintenance-of-interstate-order factor in a given case, "the court may also consider whether or not application of Minnesota law will encourage forum shopping." *Hague v. Allstate Ins. Co.,* 289 N.W.2d 43, 49 (Minn.1979), *aff'd,* 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981); *see also Lommen,* 522 N.W.2d at 151 ("One particular concern in choice-of-law methodology is to minimize forum shopping designed to influence choice of law."). Maintenance of interstate order becomes "a

strong consideration" if there is any evidence that Nesladek moved to Minnesota "for the purpose of bringing suit." *Hague,* 289 N.W.2d at 49. As discussed *supra,* there is indeed such evidence in this case, thus supporting the application of Nebraska law.

We conclude that the maintenance-of-interstate-order factor favors the choice of Nebraska law. Nebraska is the state in which almost all the events that gave rise to this lawsuit occurred. In contrast, Minnesota has only the remotest connection with the subject matter of the case. Moreover, the Nesladeks have admitted to forum shopping in this case, a practice that undercuts the maintenance of interstate order.

### C. Simplification of the Judicial Task

This consideration would seem to have little relevance here. The District Court is capable of determining, interpreting, and applying either the law of Nebraska or the law of Minnesota, since both are straightforward and there is no indication that the plain language of the statutes and the courts' interpretations of them are inadequate to provide the guidance a trial court might wish to have. *See Jepson v. General Casualty Co.,* 513 N.W.2d 467, 472 (Minn.1994) (en banc).

### D. Advancement of the Forum's Governmental Interests

As a matter of Minnesota law, this factor requires analysis not only of Minnesota's governmental interests, but also of Nebraska's public policy. *See Gate City,* 410 N.W.2d at 451; *Myers,* 225 N.W.2d at 242. It is hard to conceive of the case where the application of forum law would not advance the forum's governmental interests. A forum state's law reflects the forum state's interests—or it would not be the law of the forum. Therefore this consideration would always favor the choice of forum law unless, as a Minnesota court has declared, we consider "the relative policy interests of the two states." *Lommen,* 522 N.W.2d at 152.

In considering the relative policy interests of Nebraska and Minnesota, we note that both the Nebraska statute of repose and the Minnesota useful life statute advance the

same governmental interest, to wit, restricting liability for injury allegedly caused by older products. *See Hodder,* 426 N.W.2d at 832; *see also Norwest Bank,* 960 F.2d at 758 (giving possible rationales for the restriction in Nebraska). The Minnesota Supreme Court reviewed the useful life statute's legislative history and concluded: "The legislature was concerned about expanding products liability and intended to limit open-ended liability for aging products." *Hodder,* 426 N.W.2d at 830. The Nebraska statute of repose clearly advances the same interest the Minnesota useful life statute advances, even as it furthers Nebraska's own governmental interest.

The opinion in *Hodder,* an en banc decision of the Minnesota Supreme Court, suggests that useful life statutes "seem incoherent both theoretically and operationally." *Id.* at 832 (quoted authority omitted). The authoring justice "wonders if it is possible to devise a workable repose statute that measures the time period by a useful life concept." *Id. Hodder* had no other justices writing, so we feel justified in concluding that repose statutes are not an aberration in the eyes of the Minnesota Supreme Court.[7]

As Nesladek points out, Minnesota does have an interest in "providing access to its courts for its citizens," *Myers,* 225 N.W.2d at 243, an interest that will not be advanced by application of Nebraska law. Application of Minnesota law, however, does not advance Minnesota's countervailing interest in discouraging forum shopping. *See Jepson,* 513 N.W.2d at 471. Because of the distinct presence of forum shopping in this case, we have good reason to conclude that the balance of interests favors application of Nebraska law. We point out again that the Nesladeks, although now Minnesota citizens, were Nebraska citizens when they acquired the two Ford trucks that Ken Nesladek and Harvey Kreikemeirer combined into one truck and at the time of Jeremy's injury and death.

Further, we conclude that the Nebraska statute of repose does not go so far as to offend another of Minnesota's interests upon which Nesladek relies on, compensating tort victims. *See Jepson,* 513 N.W.2d at 472. Nesladek contends that Minnesota products liability law advances this interest, as the Nebraska statute of repose does not. Although Nesladek's assertion may be true for Minnesota products liability law generally, it is not true for the state's useful life statute. The useful life statute is a defense to a tort action, and can be said to "advance" the interest in compensating tort victims only relative to the Nebraska statute of repose. The useful life of the modified truck would be available as a defense for Ford if Minnesota law applied, and it is purely speculative whether Nesladek would be successful on her claim if met by such a defense. In these circumstances, we conclude that the other governmental interests discussed here have more relevance under this choice-influencing consideration than Minnesota's interest in compensating tort victims. *See id.* ("On the facts of this case, however, our choice is influenced more by our analyses of predictability and maintenance of the interstate order than it is by our governmental interest in compensating a tort victim.").

We believe that on balance this factor favors the choice of Nebraska law.

### E. The Better Rule of Law

"Concern for the 'better law' is part of a comprehensive test and is to be exercised only when other choice-influencing considerations leave the choice of law uncertain." *Myers,* 225 N.W.2d at 244; *see also Gate City,* 410 N.W.2d at 451. We conclude that "factual contacts with the forum and state policy considerations" (that is, our analysis of the other Leflar factors) favor the application of Nebraska law, and so we need not decide which state has the better law.[8] *DeRemer v.*

---

7. The *Hodder* court's discussion of other states' statutes of repose that contain a presumptive period of useful life was neutral, except for a question about constitutionality. *See Hodder,* 426 N.W.2d at 830 & n. 3. The Nebraska Supreme Court since has upheld the validity of section 25–224(2) against claims that it violated the state and federal due process and equal pro-

tection clauses, and the state constitution's access-to-courts provision. *Spilker v. City of Lincoln,* 238 Neb. 188, 469 N.W.2d 546 (1991).

8. The Minnesota Court of Appeals recently noted "that the Minnesota Supreme Court has given the 'better law' consideration no significant weight in a case for more than a decade." *Lom-*

*Pacific Intermountain Express Co.*, 353 N.W.2d 694, 698 (Minn.Ct.App.1984). In any event, under Professor Leflar's instructions to choose as the better law that which makes "good socio-economic sense for the time when the court speaks," we are not prepared to say that either Nebraska law or Minnesota law is superior to the other. *Jepson*, 513 N.W.2d at 473 (quoting Robert A. Leflar, *Conflicts Law: More on Choice–Influencing Considerations*, 54 Cal.L.Rev. 1584, 1588 (1966)). Each merely reflects a different approach to the same problem, both "neither better nor worse in an objective way." *Jepson*, 513 N.W.2d at 473.

## V.

For the reasons discussed above, we hold that this case is subject to the Nebraska statute of repose. Accordingly, the judgment of the District Court is affirmed.

LAY, Senior Circuit Judge, dissenting.

I respectfully dissent.

Although this is a diversity action and is not binding authority beyond this case, at least as far as Minnesota law is concerned, I nevertheless feel compelled to dissent as to the majority's choice-of-law analysis.[1] I do so because I think it is obvious that both the

district court and the majority have misconstrued the controlling choice-of-law rules under Minnesota law. The majority emphasizes that because the plaintiff is guilty of forum shopping, Nebraska, not Minnesota law should be applied. With all due respect, this line of reasoning makes little sense. The majority's approach offers a sanction or punishment rather than an analysis as to choice of law under Minnesota's conflicts methodology.

More importantly, the Minnesota Supreme Court has been quite clear that in tort situations, only the last two items of Professor Leflar's choice-influencing considerations are relevant. The majority fails to provide a careful analysis of existing Minnesota law. In *Schwartz v. Consolidated Freightways Corp.*, 300 Minn. 487, 221 N.W.2d 665, 668 (1974), *cert. denied*, 425 U.S. 959, 96 S.Ct. 1740, 48 L.Ed.2d 204 (1976), and *Bigelow v. Halloran*, 313 N.W.2d 10, 12 (Minn.1981), the Minnesota Supreme Court stated that only the last two items of Professor Leflar's five-point methodology are relevant to tort cases. These two considerations are "1) advancement of the forum's governmental interests; and 2) application of the better rule of law." *Bigelow*, 313 N.W.2d at 12; *Schwartz*, 221 N.W.2d at 668.

*men v. City of East Grand Forks*, 522 N.W.2d 148, 153 n. 4 (Minn.Ct.App.1994).

1. I do not quarrel with the majority's ultimate finding that Nebraska's statute of repose is substantive law. However, I do think the question is much closer than the majority acknowledges. I believe it is significant that the statute of repose appears under the civil procedure section of Nebraska's code. *See* Neb.Rev.Stat. § 25–224. I also feel the majority misses the emphasis of the court's colloquy at oral argument relating to the equitable tolling of the statute of repose for reasons of infancy or incapacity. *Lawson v. Ford Motor Co.*, 225 Neb. 725, 408 N.W.2d 256, 258 (1987), and *Macku v. Drackett Products Co.*, 216 Neb. 176, 343 N.W.2d 58, 61 (1984), simply illustrate that the statute of repose has or could have been tolled in the past on the basis of infancy or incapacity, and that this fact generally demonstrates that it is a procedural provision. *Lawson* and *Macku* hold that Nebraska's tolling provision for infancy and incapacity tolls Neb. Rev.Stat. § 25–224(4), rather than section 25–224(2), which is at issue in this case. Yet because section 224(4) extended section 224(2) by two years after the latter statute's enactment, it

functionally served as a statute of repose for actions existing at that time. *Lawson* demonstrated that this repose period could indeed be tolled:

> Section 25–224(4) provides that notwithstanding the 10–year ban imposed by § 25–224(2), "any cause of action or claim which any person may have on July 22, 1978, may be brought not later than two years following such date."
> The foregoing 2–year period of limitations, however, *is* extended by [Nebraska's tolling provision].

408 N.W.2d at 258.

The fact that tolling provisions are not at issue in this case is not material. The point is that substantive law and substantive rights cannot be tolled as has been done with Nebraska's statute of repose. However, I leave this to the Nebraska Supreme Court to more definitively resolve in the event that they need to do so, and simply recognize that our opinion is only controlling in this case. Thus, I do not necessarily agree with the analysis made by the majority opinion on the substantive aspect of the statute of repose, but I assume that it is a substantive provision for purposes of this dissent.

I am not aware that the *Schwartz* and *Bigelow* cases have been overruled. In fact, in *DeRemer v. Pacific Intermountain Express Co.*, 353 N.W.2d 694, 697 (1984), the Minnesota Court of Appeals, following the analysis in *Schwartz, Bigelow*, and *Milkovich v. Saari*, 203 N.W.2d 408 (Minn.1973), reiterated: "The relevant considerations in tort cases are two: (1) advancement of the forum's governmental interests; and (2) application of the better rule of law."

Moreover, the *Schwartz* court clearly discounted the relevance of forum shopping in Minnesota's choice-of-law analysis. The court stated:

> Defendants argue that plaintiff was forum shopping. Suffice it to say that the courts of this state are open to those residents and nonresidents alike who properly invoke, within constitutional limitations, the jurisdiction of these courts. In the case at bar, plaintiff is a Minnesota resident who is currently suffering from extensive and severe injuries. It would be at least plausible to presume that Minnesota courts would be plaintiff's logical choice. Further, it is noteworthy that plaintiff did not first bring his action in another state and then later bring suit in this state.

221 N.W.2d at 669.

Furthermore, to support its use of forum shopping, the majority quotes *Lommen v. City of East Grand Forks*, 522 N.W.2d 148, 151 (Minn.Ct.App.1994), out of context. The *Lommen* court, however, actually followed the principle in *Schwartz* and concluded that a party's choice of forum should be irrelevant:

> The City asserts that Lommen might have filed suit in Minnesota to avoid North Dakota's seat belt defense and because North Dakota does not provide for joint and several liability; the City argues that Minnesota law should thus apply simply because Lommen voluntarily chose the Minnesota forum. To the extent Lommen may have been forum shopping, we note that we do not prefer Minnesota law on any *substantive* issue simply because Minnesota is the forum. *See* Robert A. Leflar, *American Conflicts Law* § 90, at 182 (3d ed. 1977) ("Mere forum preference, as such and by itself, is not a valid *reason* for any choice-of-law result." (emphasis in original)). *Choice of forum ought not determine choice of law.*

522 N.W.2d at 151–52 (final emphasis added).

The majority also places reliance upon *Jepson v. General Casualty Co.*, 513 N.W.2d 467 (Minn.1994), in its discussion of forum shopping. Yet the majority fails to recognize that *Jepson* is not a tort case but is in fact a case involving insurance contracts. *See id.* at 470. In such a case, it is clear that all five of the Leflar considerations become relevant in determining the applicable choice of law. *Jepson* stated that under certain narrow circumstances, Minnesota does have an interest in preventing forum shopping in contract cases. *Id.* at 470. As the *Jepson* Court said, this is true:

> where we would be sending a message to those people living on our borders to take advantage of the benefits our neighboring states offer in terms of lower insurance rates, lower vehicle registration fees, and sales taxes, and then, if they are injured, to take advantage of Minnesota's greater willingness to compensate tort victims. Minnesota does not have an interest in encouraging that conduct.

513 N.W.2d at 471–72. The dangers which *Jepson* addresses in the context of an insurance contracts suit are simply not present in the current action, which is strictly a tort case.

Similarly, I point out that in *Hague v. Allstate Insurance Co.*, 289 N.W.2d 43 (Minn. 1979), *aff'd*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981), in which the court discussed all five choice-of-law factors, it again was analyzing the stacking of insurance contracts. The court makes clear in the *Hague* case that its analysis of the choice of laws was to examine both tort and contract considerations. *Id.* at 48. It is significant that the trial court had deemed the advancement of the forum's governmental interest and the better rule of law the only relevant considerations. *Id.* It is interesting to note that the court held the trial court was affirmed. *Id.* at 49. Nonetheless the court analyzed each of these interests because it was not only

dealing with the question of compensation of a tort victim, but also with the policies and interests underlying stacking insurance contracts. *Id.* at 48–49.

Thus, I think the majority misstates the conflict of law analysis that exists in Minnesota, and its approach is clearly contrary to the beacon cases of *Schwartz, Bigelow,* and *Milkovich.* These cases first make clear that because this is a tort action, the majority should have considered only the advancement of the forum's governmental interest and the better rule of law. In addition, I think the policy in Minnesota is that which the *Schwartz* case has previously announced; namely, the Minnesota courts are open to those residents and nonresidents alike who properly invoke their jurisdiction. *See* 221 N.W.2d at 669. As the court in the *Lommen* case recently stated, forum shopping is not a valid reason for any choice-of-law result and should not, under the dictates of common sense, determine the choice of law. *See* 522 N.W.2d at 151–52. With these principles in mind, I turn to the methodology used under Minnesota law to determine the proper law to apply in this case.

In analyzing the advancement of the forum's governmental interest, we look to both factual contacts and policy considerations. *See, e.g., Schwartz,* 221 N.W.2d at 668. I respectfully submit that Minnesota has as great as, if not more contacts with plaintiff's lawsuit than Nebraska. The Nesladek family, including Plaintiff Jill Nesladek, trustee for the estate of Jeremy Nesladek, are residents of Minnesota. They have lived here since May of 1992. They pay taxes under Minnesota law. They either rent or own a home in Minnesota. Even if Jill Nesladek and her family moved to Minnesota solely for the purpose of commencing the lawsuit, which they did not, it still remains that she is a legitimate resident of this state, and as the Minnesota courts have made clear, its courts are open to both residents and nonresidents. *See Schwartz,* 221 N.W.2d at 669.

In addition, Minnesota also has substantial contacts with the alleged wrongdoing; that is, Ford assembled and then placed in the stream of commerce the actual vehicle in question. The allegedly defective vehicle which brought about the wrongful death was sold commercially by Ford in the state of Minnesota. The fortuitous fact that the wrongful death happened to occur in Nebraska or that the plaintiff lived in Nebraska at the time of the occurrence is not of any greater weight than Minnesota's contacts. At the time the lawsuit was filed, Minnesota's interest in this litigation is at least as great as, and probably greater than, Nebraska's.[2]

Turning to policy considerations, the laws in question—Minnesota's useful-life statute and Nebraska's statute of repose—both further the interest of placing some time limit on the bringing of products liability actions. Yet Minnesota clearly has an additional policy interest in deterring Ford from putting a defective product into the stream of commerce within its borders. *See, e.g., Mitchell,*

---

**2.** Courts frequently apply the law of the jurisdiction where an allegedly defective product was assembled or placed into the stream of commerce, or where the plaintiff is domiciled, rather than the law of the state where the accident or injury occurred. *See, e.g., Mitchell v. Lone Star Ammunition, Inc.,* 913 F.2d 242, 250 (5th Cir. 1990) (holding Texas's substantive law should apply rather than the law of the state where the accident occurred, because Texas has a particularly strong interest "when the defective product in question was manufactured and placed in the stream of commerce" in Texas); *In re Air Crash Disaster,* 769 F.2d 115, 120 n. 7 (3d Cir.1985) (choosing to apply Pennsylvania law because that state has the greatest interest in governing the manufacture of products within its borders, although the helicopter crash at issue happened elsewhere), *cert. denied,* 474 U.S. 1082, 106 S.Ct. 851, 88 L.Ed.2d 891 (1986); *Turcotte v. Ford*

*Motor Co.,* 494 F.2d 173, 177–78 (1st Cir.1974) (concluding Rhode Island, the plaintiff's domicile, had a stronger governmental interest in the suit than Massachusetts, the state where the automobile accident occurred, because Rhode Island has a strong interest in compensating its residents for torts resulting in severe injuries or deaths); *Lewis–DeBoer v. Mooney Aircraft Corp.,* 728 F.Supp. 642, 645 (D.Colo.1990) (finding fact that the defendant made and sold allegedly defective airplane door latch in Texas, outweighed fact that plaintiffs were from Colorado and plane crash occurred there); *Kozoway v. Massey–Ferguson, Inc.,* 722 F.Supp. 641, 643 (D.Colo.1989) (determining Iowa law rather than law of Alberta, Canada should apply because defective hay baler was manufactured in Iowa, while fact that plaintiff was injured on his farm in Canada was merely fortuitous).

913 F.2d at 250. This interest is better served by Minnesota's useful-life statute because it is less restrictive and therefore may contribute to greater deterrence than Nebraska's law. In addition, Minnesota's general interests in allowing access to its courts for its residents and compensating tort victims tips the balance further in favor of Minnesota's rule. *See, e.g., Bigelow,* 313 N.W.2d at 12 ("[T]his court has often said that it is in the interest of this state to see that tort victims are fully compensated."); *Myers v. Government Employees Ins. Co.,* 225 N.W.2d 238, 243 (Minn.1974) ("Minnesota ... advances its governmental interest by providing access to its courts for its citizens. . . .").

Thus, the advancement of the forum's government interest, both terms of factual contacts and policy considerations, weighs in favor of applying Minnesota law. Even assuming, *arguendo,* that this factor points equally to Minnesota and Nebraska, Minnesota's useful-life statute is the better rule of law under the circumstances existing *in this particular case.* The imposition of a repose period in this factual context would not serve a worthwhile purpose. A statute of repose is based on the idea that a defect does not really exist if the product has been in use for longer than the repose period. Yet here, at least according to the plaintiff's allegations, Ford has known for many years of this defect and failed to recall the vehicle or properly warn of its dangers. To now allow Ford to escape the possibility of liability merely because the repose period has passed, even though Ford may have known of the existence of the defect long before the statute's running, serves no purpose but to arbitrarily punish the plaintiff. Thus, Nebraska's inflexible statute of repose is not well suited for these circumstances.

Rather, because this case involves a known defective product, the equities favor allowing the plaintiff to bring the cause of action and then letting a jury decide whether the product has run the course of its useful life. I contend, therefore, that Minnesota's law should be applied under Minnesota's choice-of-law methodology.

For the foregoing reasons, I respectfully dissent.