United States Court of Appeals

For the Eighth Circuit

_____

No. 15-3115

_____

Blake Marine Group

*Plaintiff - Appellant*

v.

CarVal Investors LLC; CVI GVF (Lux) Master S.A.R.L.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 15, 2016
Filed: July 13, 2016

_____

Before MURPHY and SHEPHERD, Circuit Judges, and PERRY,[1] District Judge.

_____

MURPHY, Circuit Judge.

Blake Marine Group, Inc. (Blake) brought this action against CarVal Investors LLC (CarVal) and CVI GVF (Lux) Master S.A.R.L. (CVI Lux), alleging tortious interference with Blake's contract to lease a barge and crane to a third party. The

_____

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri, sitting by designation.

district court[2] dismissed Blake's complaint as time barred after applying Alabama's two year statute of limitations. Blake appeals, and we affirm.

## I.

Blake is an Alabama corporation which was based in Alabama at all times relevant to this case.[3] CarVal is a Delaware LLC based in Minnesota, and CVI Lux is a related entity organized under Luxembourg law. CVI Lux is also a shareholder of Oceanografia, S.A. de CV (Oceanografia), a Mexican company which provides offshore support services to oil companies.

On January 23, 2009 Blake entered into a charter agreement to lease a barge to Oceanografia for $40,000 per day. The barge was equipped with a crane to be installed on one of Oceanografia's offshore vessels for use in performing its contract with an oil company. On January 29 CarVal emailed Oceanografia from its Minnesota offices and directed it to terminate the charter agreement, asserting that CVI Lux had not consented to that charter as required by its shareholder agreement. Oceanografia terminated the charter later that day.

In January 2013 Blake sued CarVal in New York state court for tortious interference with the charter agreement after learning that CarVal had leased its own vessel to Oceanografia. Blake later voluntarily dismissed that suit and brought this action in the federal district court in Minnesota in January 2015, asserting a similar tortious interference claim against both CarVal and CVI Lux. CarVal and CVI Lux then filed a motion to dismiss which the district court granted after concluding that Alabama's two year statute of limitations barred Blake's claim. The court explained

[2]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

[3]In 2012 Blake moved its principal place of business to Louisiana.

-2-

that it had applied the Alabama statute rather than Minnesota's six year statute of limitations because Alabama's interest in protecting its resident Blake outweighed Minnesota's interest in compensating nonresident plaintiffs. Blake appeals.

## II.

### A.

We review de novo the district court's dismissal of Blake's complaint, including its choice of law analysis. Whitney v. The Guys, Inc., 700 F.3d 1118, 1123 (8th Cir. 2012). To determine the applicable limitations period we look to the choice of law rules of the forum state, which in this case is Minnesota. Id. Under its "borrowing statute," Minnesota applies the limitations period of the state whose substantive law governs a claim. See Minn. Stat. § 541.31.

To determine the state law governing Blake's claim, we apply Minnesota's three step choice of law analysis. Whitney, 700 F.3d at 1123–24. The first two steps inquire whether differing state laws present an "outcome-determinative" conflict and whether each law "constitutionally may be applied to the case at hand." Id. at 1123. The third step then requires a multifactored test to consider the "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." Id. at 1124.

Here, the parties agree that the choice between Alabama's two year limitations period and Minnesota's six year limitations period is outcome determinative and that either state's law may constitutionally be applied. They also agree that the first, third,

and fifth factors under step three are irrelevant to this case.[4]  Their arguments thus focus on the remaining two factors—maintenance of interstate order and advancement of the forum's governmental interest.

The Minnesota Supreme Court has explained that the primary concern regarding the maintenance of interstate order is "whether the application of Minnesota law would manifest disrespect for [another state's] sovereignty or impede the interstate movement of people and goods." Jepson v. Gen. Cas. Co. of Wisconsin, 513 N.W.2d 467, 471 (Minn. 1994).  This factor is relevant in tort suits where there is evidence of forum shopping and Minnesota has only a "remot[e] connection" to the claim. Nesladek v. Ford Motor Co., 46 F.3d 734, 739 (8th Cir. 1995).  In this case appellees argue that Blake has engaged in forum shopping by dismissing its New York action and refiling in Minnesota, seeking a longer limitations period.  Since Minnesota is the state where the alleged tortious interference occurred and it also is where CarVal is based, we conclude that Minnesota "has sufficient contacts with and interest in the facts and issues being litigated" to mitigate concerns about the disruption of interstate order. Id.  The second factor is therefore neutral. See, e.g., Hague v. Allstate Ins. Co., 289 N.W.2d 43, 48–49 (Minn. 1978).

The fourth factor, advancement of the forum's governmental interest, "requires analysis not only of Minnesota's governmental interests, but also of [Alabama's] public policy." Nesladek, 46 F.3d at 739.  Blake first argues that Minnesota has an interest in compensating tort victims which favors the application of Minnesota law.

---

[4]While the predictability of result factor is irrelevant "when an action arises out of an accident," Hughes v. Wal-Mart Stores, Inc., 250 F.3d 618, 620 (8th Cir. 2001), the alleged tortious conduct in this case was intentional.  Thus, the predictability factor is not necessarily immaterial. See, e.g., Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1394 (8th Cir. 1997) (discussing predictability of result in defamation action).  We conclude on balance that this factor does not favor application of either Minnesota or Alabama law in this case.

See Jepson, 513 N.W.2d at 472. Our court has previously explained, however, that a state's "interest in protecting nonresidents from tortious acts committed within the state . . . is only slight and does not support application of its law to the litigation." Hughes v. Wal-Mart Stores, Inc., 250 F.3d 618, 621 (8th Cir. 2001). In contrast, "[c]ompensation of an injured plaintiff is primarily a concern of the state in which [the] plaintiff is domiciled."[5] Kenna v. So-Fro Fabrics, Inc., 18 F.3d 623, 627 (8th Cir. 1994) (quoting Bryant v. Silverman, 703 P.2d 1190, 1194 (Ariz. 1985)). Here, Alabama's interest in compensating Blake, a resident of that state, outweighs Minnesota's interest and favors the application of Alabama law. See Nesladek, 46 F.3d at 740 ("balance of interests" favored application of nonforum state's law where plaintiff was resident of that state at time of injury).

Blake contends that the application of Minnesota's six year limitations period would better serve Alabama's interest in compensating tort victims since it would allow more time for its claim to proceed. Blake has however not provided any authority to show that Minnesota would apply its own law in order to promote another state's policy interests (particularly where, as here, that state's own laws do not further such interests). We conclude that Blake's argument misconstrues Minnesota's choice of law rules. When analyzing the fourth choice of law factor, we determine which state's law to apply based on "the relative policy interests of the two states." Nesladek, 46 F.3d at 739. We do not, as Blake suggests, apply whatever law we believe best advances the interests of the state with the most significant interests at stake.

According to Blake, Minnesota also has an interest in holding its own residents (one of which is CarVal) accountable for any torts they commit within the state. Our court rejected a similar argument in Hughes, however, when we concluded that a forum state's "interest in having its product liability laws enforced against its own

_____

[5]Notably, the cases on which Blake relies to demonstrate Minnesota's interest in compensating tort victims all had Minnesota plaintiffs. See Jepson, 513 N.W.2d at 470; Danielson v. Nat'l Supply Co., 670 N.W.2d 1, 3 (Minn. Ct. App. 2003).

corporate residents" did not support application of its law in that case, in which the plaintiff was a nonresident. Hughes, 250 F.3d at 621. While Blake emphasizes that the alleged interference here originated from CarVal's Minnesota offices, the resulting injury occurred outside of Minnesota, and "we fail to see how any important [Minnesota] governmental interest is significantly furthered by ensuring that nonresidents are compensated for injuries that occur in another state." Id. (emphasis in original). We conclude that the fourth choice of law factor favors the application of Alabama law. Since this is the only factor which favors either state's law, the district court did not err by applying Alabama law and dismissing Blake's claim as time barred.

Blake also asserts that even if the choice of law factors favor Alabama law, the district court should have applied the "fairness exception" to Minnesota's borrowing statute. That exception requires the application of Minnesota's statute of limitations if the conflicting statute is "substantially different" from Minnesota's and "has not afforded a fair opportunity to sue." Minn. Stat. § 541.33. Since Blake did not raise this argument below, however, it is waived. See, e.g., Corn Plus Co-op. v. Cont'l Cas. Co., 516 F.3d 674, 680 (8th Cir. 2008).

B.

Blake next contends that the district court should have applied the doctrine of laches under its admiralty jurisdiction when assessing timeliness, but we conclude that such jurisdiction is lacking in this case. A party invoking a district court's admiralty jurisdiction must satisfy two requirements. First, the party must show that "the tort occurred on navigable water or [that] injury suffered on land was caused by a vessel on navigable water." Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995). They must also show that the tort had a "potentially disruptive impact on maritime commerce" and that the conduct resulting in the tort had a "substantial relationship to traditional maritime activity." Id.

-6-

In this case, Blake has not shown that the alleged tort occurred on navigable waters. For purposes of admiralty jurisdiction, a tort arises where the injury occurs. See J. Lauritzen A/S v. Dashwood Shipping, Ltd., 65 F.3d 139, 142 (9th Cir. 1995). Blake argues that its damages occurred at sea since appellees prevented the installation of its crane on Oceanografia's vessel, thus interfering with Oceanografia's maritime operations. Neither of these interests represents the financial injury Blake has alleged in this case, however. Blake's alleged damages consist of lost future income from the charter, but any such damages were not sustained at sea. See, e.g., Great Plains Trust Co. v. Union Pac. R. Co., 492 F.3d 986, 993 (8th Cir. 2007) ("purely economic" damages from breach of contract at corporate headquarters). Moreover, Blake also seeks to recover costs it incurred in obtaining the barge, and "this portion of the claimed damages arose solely on land at the time of [Oceanografia's] breach." J. Lauritzen, 65 F.3d at 143. We therefore conclude that Blake has not satisfied the first requirement for invoking federal admiralty jurisdiction and that laches does not apply.

C.

Blake finally contends that even if Alabama's limitations period applies, the statute should have been tolled based on appellees' fraudulent concealment of the facts underlying its claim. We disagree.

Federal plaintiffs must plead "allegations of fraud, including fraudulent concealment for tolling purposes . . . with particularity." Great Plains, 492 F.3d at 995. In this case, Blake has not alleged "facts which show that the [appellees] fraudulently prevented discovery of the wrongful act on which the action is based." Sellers v. A.H. Robins Co., 715 F.2d 1559, 1561 (11th Cir. 1983) (applying Alabama law). To the contrary, Blake alleged that by 2010 it had learned of facts underlying its tortious interference claim—specifically, that appellees had "intentionally and maliciously cause[d] Oceanografia to breach the [charter agreement] and that such facts supported" its claim. Blake thus was aware of the alleged interference for more

than two years before this suit was filed, and "a limitation period is tolled only until the plaintiff discovers . . . his cause of action."  Id.; see also Serra Chevrolet, Inc. v. Edwards Chevrolet, Inc., 850 So.2d 259, 265 (Ala. 2002) (elements of tortious interference claim under Alabama law).  Accordingly, there was no basis to toll the two year limitations period.

III.

For these reasons we affirm the judgment of the district court dismissing the complaint of Blake Marine Group, Inc.

_____